(Decided 7th March, 1883.)

---

JAMES L. GOODWIN, and ERVAL GRAY GOODWIN by his next friend, JAMES L. GOODWIN *vs.* JULIA A. WHITE, and others.

*Province of a Court of Equity to vacate a Fraudulent deed—Duty of party alleging Fraud to furnish Clear proof of the fact—Evidence of fraud—Limit of the Right to dispose of property—Disposition of property not to be Rescinded simply because it is Absurd or improvident.*

If the grantee in a deed has placed herself *in loco parentis*, towards the grantor, and has abused the confidence inspired by that relation in obtaining the deed, a Court of equity will not hesitate a moment in undoing what has been so unworthily procured to be done.

Where a party has been deceived by the substitution of one instrument for another, or whose ignorance has been taken advantage of, and he is induced to do one thing when he intends and supposes he is doing another and a different thing, no fraud can be more flagrant, and it is incumbent upon the party alleging such fraudulent conduct to furnish clear proof of the fact. In such case the relief must proceed upon what is expressly alleged and proved by the party complaining, and not be eked out by the aid of presumption.

Every person, whether man or woman, of sound and disposing mind, if under no legal disability, has the absolute right of making any disposition of his or her property that he or she may think proper, provided it does not interfere with the existing rights of third persons.

If the disposition of property be fairly made by a competent person, though entirely voluntary and without consideration, it is perfectly valid, and cannot be rescinded simply because the Court may think it absurd or improvident that such a disposition should have been made.

APPEAL from the Circuit Court for Anne Arundel County, in Equity.

The Court below, (MILLER J.,) held that while the complainants were not entitled to a decree vacating the deed, they were, under the prayer for general relief, entitled to be paid the fifty dollars consideration money, with interest thereon from the date of the deed, and accordingly adjudged and ordered that if the defendants, or one of them, should, on or before the 1st of August, 1882, pay to the complainants, or bring into Court to be paid to them, the sum of fifty dollars, with legal interest thereon from the 19th day of July, 1876, till so paid, then and in that event, the bill should stand dismissed with costs, and in the event of a neglect or refusal on the part of the defendants so to pay said sum, with legal interest as aforesaid, a decree, upon application of the complainants, would be passed for a sale of the property, to pay the same. From this order the present appeal was taken. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, YELLOTT, STONE, ROBINSON, and IRVING, J.

*James H. Hodges,* and *William H. Tuck,* for the appellant.

*M. Bannon,* for the appellees.

ALVEY, J., delivered the opinion of the Court.

In this case the bill was filed to have vacated a deed from Mary M. Disney to Julia A. Disney, made on the

19th of July, 1876, for an undivided half of a small farm, the interest conveyed supposed to be worth from $800 to $900. The consideration mentioned in the deed is only $50.

After the deed was made Mary M. Disney, the grantor, married James L. Goodwin, and Julia A. Disney, the grantee, married A. A. White; and Goodwin and wife filed a bill against White and wife. Since the institution of the suit and the taking of the testimony, but before the hearing in the Court below, the wife of Goodwin died, leaving surviving her one child, who was made a party plaintiff in the place of the mother.

The grounds upon which the deed is sought to be vacated are fraud and undue influence on the part of the grantee in the deed. It is alleged in the bill that the grantor was invited to visit the grantee in the City of Baltimore, and was induced by the latter to go with her to an attorney's office where the deed was already prepared to be executed, the same having been prepared at the instance of the grantee. It is further alleged that the deed was executed under a false impression as to the nature and import of the instrument; that the deed was signed and acknowledged in the belief and confidence that it was simply a power of attorney to authorize the aunt, the grantee in the deed, to rent out and receive the rents from the farm; and that it was not until some time afterwards that she, the grantor, discovered the real nature of the instrument, and how she had been deceived and imposed upon.

The defendants, in their answer, utterly deny all fraud and imposition, and claim and insist that the deed was the free and voluntary act of the grantor, and was executed without solicitation or influence of any kind whatever, on the part of the grantee,—the grantor well knowing and understanding the true nature of her act.

The relation of the parties to the deed was that of aunt and niece, the latter, the grantor, being about twenty-three years of age, and the former about thirty.

It appears that two sisters, Louisa Disney and Julia A. Disney, were the owners in fee, as tenants in common, of the small farm in question. Louisa Disney died in March, 1876, leaving a will, by which she devised and bequeathed all her property, real and personal, to her niece Mary M. Disney, and if the niece should die without heirs or heir, then over to the sister, Julia A. Disney. Mary M. Disney as an orphan child had lived with and been reared up by her two aunts. It is disclosed in the testimony that the niece had become interested in and contemplated marriage with James L. Goodwin, to whom she was subsequently married, and that both the aunts were very strongly opposed to the match; and we gather from the evidence that it was upon the promise of the niece to the deceased aunt that she would not marry Goodwin that the property was left to her. The will, however, makes no reference to such promise.

In the first place, it is contended that the grantee in the deed was in such relation to the grantor as to exercise control and dominion over the latter, and that, from the nature of the transaction and all the circumstances attending it, it is but reasonable to presume that the deed was the result of such dominion over the mind of the grantor. And in respect to such contention it is only necessary to say, that if it were true, as contended by the plaintiffs, that the grantee in the deed had placed herself *in loco parentis* towards the grantor, and had abused the confidence inspired by that relation, in obtaining the deed, a Court of equity would not hesitate a moment in undoing what had been so unworthily procured to be done. But we have examined the record in vain to find satisfactory evidence of any such confidential relation subsisting between the parties at or near the time of the transaction. The grantee was, and had been for some time previous to the making of the deed, living in the City of Baltimore with her brother-in-law, and the grantor was living at the time

in Anne Arundel County, with her uncle ; and they only met occasionally. Moreover, the proof clearly shows that the idea of conveying the property to the aunt originated with the grantor herself, without a suggestion from the grantee, if the proof is to be relied on.

, But, as an independent ground of relief, it is alleged, and proved by the testimony of the grantor herself, that she was deceived and imposed on in the execution of the deed,—that she supposed she was executing an entirely different instrument from what it turned out to be in fact. Now, if that state of case were presented, supported by sufficient proof, it is needless to say that the Court would have no difficulty in declaring the deed a nullity. Where a party is deceived by the substitution of one instrument for another, or whose ignorance is taken advantage of, and he is induced to do one thing when he intends and supposes he is doing another and a different thing, no fraud can be more flagrant, and it is incumbent upon the party alleging such fraudulent conduct to furnish clear proof of the fact. In such case the relief must proceed upon what is expressly alleged and proved by the party complaining, and not be eked out by the aid of presumption. But here, all the material facts alleged and proved by the grantor in the deed, as to the manner and circumstances under which it was executed, have been flatly contradicted, or disproved, by other witnesses.

Mrs. Duvall proves that the grantor in the deed "used to worry and talk about the land. She said she did not want to break her word to her aunt, and yet she did not want to give up Mr. Goodwin either. She asked me if I thought her aunt Julia would take the land if she would give it to her. I told her I did not know; she asked me if I would not write and ask her to come out there, but not tell her what she wanted her to come for. I wrote accordingly to her aunt Julia. The only reason she gave me for getting rid of the land was to clear her conscience

of the promise she had made her aunt Louisa. She told me a number of times, that her aunt Louisa made her promise her that she would not marry Mr. Goodwin; that if she did not, she could have the land, and if she would not promise, she would not get it." This witness further proves that she knew the fact that the niece came to Baltimore to execute the deed.

Mrs. Julia A. White, one of the defendants and the donee in the deed, was examined, and she proves that she received a letter from her niece Mrs. Duvall, "asking me to come out there, saying she wanted to see me. I went out there, and while I was there my niece, Mary Maria, said she wanted to make her land over to me. She told me to go to Baltimore and see Mr. Bannon, and see if it could be done by law. I went to see Mr. Bannon, upon my return to Baltimore, and I gave him my sister Louisa's will. He looked at it, and I told him what Mary Maria said: He said yes, it could be done. A few days after that, inside of a week, she came to Baltimore, and then she and I went to see Mr. Bannon at his office. Then I had no more to say. She then told Mr. Bannon exactly what she wished done; she told him that she wanted him to prepare a deed of that land to me. She said she wanted to make the transfer, because her aunt Louisa did not desire her to marry that man, and she could not hold the land with satisfaction if she did so, knowing that she had the land against her aunt's wishes if she did. Mr. Bannon asked her if she knew what she was doing; she said yes. After we got through the conversation, we went in Mr. Bannon's private office, and Mr. Bannon then called Mr. Gallagher and told him to prepare the deed. After he had done so, he brought it into the room where we were, and read it aloud to us. While Mr. Gallagher was preparing the deed, Mr. Bannon, Mary Maria and myself sat and talked about different things. Mr. Gallagher then went out and got a justice

of the peace to come in to take the acknowledgment of the deed. The magistrate asked her how old she was, and if she knew what she was doing. She said she was 22, and knew what she was doing. He then said sign your name, which she did, and the justice signed his name to the acknowledgment."

This account of the transaction, given by the donee in the deed, is fully corroborated in every particular, by Mr. Bannon, the attorney in whose office the deed was drawn. He proves that the deed was read and the whole matter fully explained to the grantor, and that she was admonished as to what would be the consequence of the conveyance,—that she would regret having made the deed, and would afterwards want to get the property back,—but, notwithstanding, she persisted in the act.

Now, it is certainly true, that every person, whether man or woman, of sound and disposing mind, if under no legal disability, has the absolute right of making any disposition of his or her property that he or she may think proper, provided it does not interfere with the existing rights of third persons. If the disposition of property be fairly made by a competent person, though entirely voluntary and without consideration, it is perfectly valid, and cannot be rescinded simply because the Court may think it absurd or improvident that such a disposition should have been made. As declared by Lord Chancellor NOTTINGHAM, in *Villers vs. Beaumont*, 1 *Vern.*, 100, "If a man will improvidently bind himself up by a voluntary deed, and not reserve a liberty to himself by a power of revocation, this Court will not loose the fetters he hath put upon himself, but he must lie down under his own folly; for if you would relieve in such a case, you must consequently establish this proposition, viz., that a man can make no voluntary disposition of his estate, but by his will only, which would be absurd."

510                MARYLAND REPORTS.

The case would seem to be a hard one, and we regret. that no relief can be afforded. We have no alternative but to affirm the decree of the Court below.

*Decree affirmed.*

