# WARNER *v.* JACKSON.

EQUITY; CONSIDERATION; MARRIED WOMEN; LACHES.

1. A court of equity will not in the absence of proof of fraud set aside a deed made by one joint tenant to another, the parties being sisters, seven and a-half years after the execution of the deed, where the consideration recited as a nominal one was in reality love and affection.

2. A married woman as to transactions concerning her separate statutory estate, is equally subject to the imputation and consequences of laches as if she were a *feme sole.*

No. 501.   Submitted October 21, 1895.   Decided November 11, 1895.

HEARING on an appeal by the complainants from a decree dismissing a bill to set aside a deed.   *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Campbell Carrington* and *Mr. J. McD. Carrington* for the appellant :

There is no artificial, fixed or determined rule according to which the defence of laches applies. Each case as it arises must be decided according to its own particular circumstances, taking into consideration all the elements which affect the circumstances. It is left to the sound discretion of the court. *White* v. *Martindale*, 91 Mo. 268; *Oil Co.* v. *Maybury*, 91 U. S. 587 ; *Anderson* v. *Northrop*, 30 Fla. 612.

Relationship of parties and the fact that they are members of the same family has an important bearing upon the question of laches, delay under such circumstances not being so strictly regarded as where the parties are strangers to each other. *Yeaton* v. *Yeaton*, 4 Ill. App. 579 ; *Paschall* v. *Hinderer*, 28 Ohio St. 568 ; *Lever* v. *Fielder*, 9 Jur. N. S. 190.

Laches will not be imputed to one in peaceable possession of land for delay in resorting to a court of equity for establishing his right to the legal title. The possession is notice to all of the possessor's rights, and he need only assert them when required to do so. *Ruckman* v. *Cory*, 129 U. S. 387 ; *Wilson* v. *Byers*, 77 Ill. 76 ; *Mickey* v. *Ellar*, 54 Mich. 518.

Where positive evidence exists which proves that defendant all along recognized plaintiff's right, delay on the part of the plaintiff in bringing suit will be excused. *Bedford Co.* v. *Railroad Co.*, 14 Lea (Tenn.) 525.

So long as the relative position of the parties is not altered to their prejudice, delay is of little consequence. *Nudd* v. *Powers*, 136 Mass. 373 ; *Doggs* v. *VanDyck*, 37 N. J. 130; *Platt* v. *Platt*, 58 N. Y. 646 ; *Wollaston* v. *Tube*, L. R. 9 Eq. 44 ; *Amner* v. *McSward*, 24 N. W. 594.

*Mr. Robert H. Terrell* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The bill in this case was filed by Isabelle Warner and Armstead Warner, husband and wife, for the purpose of procuring the vacation of a deed from the wife to her sister, Hattie Jackson, of certain real estate described, upon the allegation that the party grantor did not assent to or intend to convey the property, though she admits in her testimony that she executed and acknowledged the deed. An injunction is also prayed for, to restrain the grantee in the deed from exercising and enforcing any right claimed to have been derived under the deed. The court below, upon testimony, and after argument, dismissed the bill, and the complainants have appealed.

It appears that the two sisters, Isabelle Warner and Hattie Jackson, had acquired by deed in 1884 or 1885 (not definitely shown), a piece of real property, No. 2169 Ninth street, N. W., in the city of Washington; and that they occupied it jointly, and treated and enjoyed it as their home· Isabelle Warner, one of the sisters, had been married some years before the acquisition of the property; but the other sister had remained unmarried until a few months before the filing of the present bill in August, 1893, when she was married to her present husband, Paul Jackson. The younger sister, Hattie, soon after her marriage, commenced asserting her exclusive right to the property, by virtue of the deed from her sister, Isabelle Warner, and gave Isabelle and her husband notice to quit the premises. This was regarded as a harsh and ungrateful proceeding, and hence the filing the bill in this case.

Fraud and deception, which seem to be the foundation of the relief prayed, are very indefinitely charged in the bill. The complainant, Isabelle Warner, alleges " that she has never knowingly signed any deed conveying her interest in said premises, No. 2169 Ninth street, N. W., in said city, to her said sister, Hattie Jackson, or to any one else whom-

soever, and that she has never received a penny's consideration from the said Hattie Jackson, or from any one else whomsoever, for her interest in said property. The complainant says that she does remember going to an attorney's office many years ago, for the purpose of signing some paper which she thought was necessary for her to sign in the settlement of her father's and mother's estate ; but if said paper was a deed of her interest in the premises No. 2169 Ninth street, N. W., said deed was secured by fraud, without consideration, and its contents were entirely unknown to the complainant, Isabelle Warner, when she signed the same."

The deed, exhibited with the bill, recites that " whereas, the said Isabelle Warner and Hattie Brown (since by marriage become Jackson) are joint tenants of the hereinafter described real estate, by conveyance from Henry Wilson Duncan, heir at law of Aaron Duncan ; and whereas, the said party of the first part (Isabelle Warner) is desirous that the party of the second part, her sister, shall hold the title to such property in severalty. Now, therefore, the said party of the first part, for and in consideration of the premises aforesaid, and the further sum of one dollar, &c., paid by the party of the second part, &c., has granted, bargained and sold, and doth by these presents grant, bargain, sell and convey, &c., unto the said party of the second part, her heirs and assigns forever, all that certain piece or parcel of land, &c., in the city of Washington, &c."

The bill is signed and sworn to by the husband of Isabelle Warner *alone*, though the proof shows beyond question that he was not present when the deed was signed and acknowledged by the wife.

The answer of the defendant, Hattie Jackson, under oath, denies all the material facts alleged to show a want of understanding on the part of Isabelle Warner, of the nature of the transaction, or that there was fraud or imposition practiced in procuring the execution of the deed. The answer states affirmatively facts to show that the making of

the deed was in pursuance of a deliberate plan on the part of the grantor.

The deed and acknowledgment bear date the 3d of March, 1886, and it was recorded on the 18th of March, 1886. It is shown by the proof that the instrument was prepared by an attorney, and that the grantor went to the office of the attorney, in company with the defendant, Hattie Jackson, then Hattie Brown, and a person by the name of King ; and that the deed was then and there prepared and read over to the grantor, and she signed it. She then went to the office of a notary public, and there in due form and manner acknowledged the deed, the same having been read over to her and signed at the office of the attorney. The grantor admits, in her testimony, that the deed was read over and explained to her by the attorney, but she says it was after she had signed the deed, but before it was acknowledged. She says, however, that she does not know that she made any objection to the deed when it was read to her by the attorney ; but she says, that after the deed was explained to her, she said to her sister, " I did not know that was what you wanted me to come down here for." The sister says that the complainant made no objection to the deed until after she, the defendant, got married ; and then it was that objection was raised to the deed.

The deed upon its face explains its character. It was made by one joint tenant to another, the parties bearing the relation to each other of sisters ; and the deed was made upon mere nominal money consideration, but really and in fact upon consideration of love and affection. In the absence of fraud or deception in obtaining the deed, the title conveyed thereby is perfectly good and effectual as between the parties. Every sane person of full age, and not laboring under disability, has a perfect right to give away or convey by deed, his or her property, unless it be on terms or for a purpose that the law repudiates and condemns. Of course, if there be fraud or imposition practiced in obtain-

ing the deed, a court of equity will afford relief by setting it aside; provided application be made in due time and form for such relief. But to obtain relief on the ground of fraud or imposition, appropriate allegations must be made and full proof furnished, before a court of equity will interpose to overthrow and vacate a solemn deed of the party claiming, or at the instance of parties claiming under the grantor in such deed. Fraud will not be presumed upon slight circumstances, but must be clearly established upon competent proof. Relief cannot be granted merely because the court may think the party acted unwisely or improvidently in disposing of her property, or, because of subsequent change of feelings or relations, she has had reason to repent of her former generosity. As was said by a great English chancellor, Lord NOTTINGHAM, in *Villers* v. *Beaumont*, I Vern. 100, " If a man will improvidently bind himself up by a voluntary deed, and not reserve a liberty to himself by a power of revocation, this court will not loose the fetters he hath put upon himself, but he must lie down under his own folly; for if you would relieve in such case, you must consequently establish this proposition, viz., that a man can make no voluntary disposition of his estate, but by his will only, which would be absurd." Upon this principle the case of *Goodwin* v. *White*, 59 Md. 503, was decided, which was a case of a voluntary conveyance, and where the circumstances of suspicion against the deed were much stronger than in the present case, and yet the deed was sustained against the grantor and those claiming under her.

In this case, as has been observed, there is no substantial or reliable evidence of fraud or imposition practiced in procuring the deed. It is shown that the deed was entirely voluntary; and the complainant herself admits that the deed was read over and explained to her by the attorney who drew it; and she afterwards acknowledged it as her act and deed, and allowed it to be placed upon the public records, where it remained for nearly seven and a half

years before she attempted to impeach it. If there was nothing else in the case to repel the claim to the relief prayed, this great delay in making the application would be sufficient to preclude the complainant. It is true the complainant was and has remained a married woman ; but she was dealing with her statutory separate estate, in regard to which she is authorized to act in all respects " in the same manner and with like effect as if she were unmarried." She has therefore been under no disability as to this property, and has been equally subject to the imputation and consequences of laches as if she were *feme sole.*

It follows that the decree appealed from must be affirmed ; and it is so ordered.

*Decree affirmed.*