## JOHN M. KENNEDY AND JAMES L. SPEIGHTS *vs.* ANNIE KENNEDY McCANN ET AL.

*Validity of Gift from a Parent to a Child—Insufficient ·Evidence &amp; Establish a Resulting Trust.*

A gift of money or property from a parent to a child is not within the rule that when a confidential relation exists between donor and donee the burden of proof is on the donee to show that the transaction was a righteous one,· but such gift will not be vacated except upon proof of the exercise of undue influence or fraud by the donee, or of the mental incapacity of the donor.

The fact that by a gift to a particular child a parent is deprived of the means of making equally large donations to other children does not invalidate the gift, for the law concedes to a person of sound mind the right to dispose of his property in any manner he may choose, not inconsistent with its policy. ·

Upon a bill by some of the heirs-at-law of a woman alleging that a house and lot had been purchased with money furnished by her to the defendant, one of her sons, and the legal title taken in his name upon his promise to execute to his mother a mortgage on the property for the amount so advanced, and asking that the defendant be directed to execute a mortgage on the property, or that it be declared that the property is held by him subject to a resulting trust in favor of the heirs of the decedent, the evidence examined and held insufficient to support the allegations of the bill, but on the contrary shows that the money was given to the defendant as a voluntary gift and was not obtained by fraud or undue influence.

Appeal from the Circuit Court No. 2, of Baltimore City (SHARP, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*S. S. Field*, for the appellants.

*William Milnes Maloy* (with whom was *Charles J. Hull* on the brief), for the appellees.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court No. 2, of Baltimore City, vacating a lease of an improved lot of ground in that city and declaring the fee-simple title thereto to be affected with a resulting trust in favor of the five children of the late Mrs. Ella J. Speights and directing it to be conveyed to them.

It appears from the record that Mrs. Speights was a widow who had been twice married. By her first husband Daniel Kennedy she had a son John M. and a daughter Annie who married Joseph McCann. By her second husband, John Thomas Speights, she had a son James L. and two daughters, Jennie who married Audley Warren and Dora who married Edward B. Baulsir. The house and lot in question were purchased on July 15th, 1901, with $5,000, supplied by Mrs. Speights, and were conveyed in fee, by the vendor, to her son James L. Speights who with his wife at once made a lease thereof for 99 years renewable forever at a nominal rent of one cent per annum, to her other son John M. Kennedy thus vesting in him the substantial ownership of the property. The two daughters of Mrs. Speights, who are the appellees in this Court, filed the bill in the Circuit Court against the other daughter and the two brothers, James L. Speights being also sued as administrator of the mother's estate, to enforce an alleged agreement by their brother John M. Kennedy to execute a mortgage on the property to secure the repayment of the $5,000 purchase-money therefor supplied by the mother in her lifetime.

The original bill, filed on October 15th, 1903, alleged that Mrs. Speights during her lifetime, having $5,000 which she desired to invest in a house on the northeast corner of Broadway and Pratt street, entered into an arrangement with her two sons whereby the house could be transferred into their names and the $5,000 purchase-money which she supplied be secured to her by a mortgage on the property. It then further averred that the money was supplied by her in pursuance of the arrangement so made and "in accordance *with a*

*distinct agreement with John M. Kennedy that the said five thousand dollars ($5,000) should be secured by a mortgage on said property,*" but that he, after acquiring the property refused to execute the mortgage, although it was drawn up and presented to him for execution. The subsequent death intestate of Mrs. Speights and the issue of letters of administration on her personal estate to James L. Speights were also alleged.

The prayer of the bill was for a decree requiring Kennedy to perform his alleged agreement by executing a mortgage on the property for $5,000 to the administrator of Mrs. Speights' estate, for the further administration of her estate in equity in Circuit Court No. 2, and for general relief.

Two of the defendants answered the bill. The answer of John M. Kennedy, the principal defendant to this bill, is stated by the record to have been lost, but in his answer to the amended bill he categorically denies that his mother ever lent him $5,000 or that he ever agreed to give her a mortgage on the property. He admits that she gave him the $5,000 with which he purchased the property but avers and insists that she gave to him as an absolute gift in pursuance of oft-repeated declarations to him and others of her purpose to give him this money with which to buy himself a home because he had stuck by her and done his duty to her as a son and had resided with her and assisted her to make her money. He further avers that in her early life, when she had been deserted by her second husband, he had worked and helped her to support the family, and that he had for many years lived with her and assisted her in the management of her affairs.

The answer of James L. Speights in his own right and as administrator also denies that there was every any agreement or arrangement between John M. Kennedy and his mother that the former should give a mortgage to the latter for $5,000 or any other amount on the property in question, and explains that the property was conveyed to him and by him leased to John M. Kenney in order that John might be able to convey it, if he desired so to do, without the necessity of having his wife join in the conveyance; and that it was well known to his

mother and sisters that the property belonged absolutely to John and that his mother had often so stated. This answer further denied the necessity or propriety of an administration of the estate in a Court of equity and declares that the defendant has already partially administered it in the Orphans' Court and is deterred from completing the administration only by the pendency of this suit.

The third defendant, Jennie Warren, did not answer the bill and a decree *pro confesso* was entered against her.

After much testimony had been taken the plaintiffs, with leave of the Court, without adding to, or in any manner modifying, the allegations of fact contained in the bill, so amended their prayer for relief as to ask in the alternative for, 1st, a decree directing Kennedy to execute the mortgage for $5,000 as already stated, or, 2nd, that the property be declared to be held by him subject to a resulting trust in favor of Mrs. Speights, her heirs, personal representatives or assigns, or 3rd, that the $5,000 "be declared an advancement or loan to the said John M. Kennedy." Kennedy in his answer filed by leave of Court to the amended bill, insisted that his mother had given him the $5,000 not as an advancement, or under circumstances from which a resulting trust could be implied, but as an absolute gift, and denied the existence of any agreement to give her a mortgage on it. The answer also set up certain objections which it insisted made the bill demurrable, but we do not deem it necessary to pass upon them as we will dispose of the case on its merits as disclosed by the evidence.

After the taking of the testimony in support of Kennedy's answer to the amended bill the case came on to be heard, and the learned Judge of the Circuit Court passed the decree appealed from. This decree, after reciting the finding of the fact that the property had been purchased with the money of Mrs. Speights for her benefit and that her sons had collusively procured the deed and lease to be made to them respectively, declares that the lease from James L. Speights and wife to John M. Kennedy is inoperative and void and that James L. Speights holds the title in fee to the property affected with a

resulting trust in favor of the five children of Mrs. Speights and directs him to convey it to them as tenants in common.

The testimony in the case, although ample, is much of it of a low order.   The witnesses as to the vital facts so contradict each other that it is impossible to reconcile their statements, and the ascertainment of the real transaction between the mother and sons, relative to the purchase of the property, necessarily involves the rejection of some of the testimony as unworthy of credit.    Mrs. Speights herself had a checkered career.    For sometime she kept a saloon in Wilmington, North Carolina, and then for a number of years she led a roving life as a fortune teller and so-called herb doctress in Virginia and North Carolina.    She finally about 1893 drifted to Baltimore where she followed similar pursuits until her death in April, 1903.    When she first settled in Baltimore she lived in squalor among negroes, but being naturally shrewd and capable, although illiterate, she soon began to prosper.    After her son Kennedy came from Norfolk and took up his residence with her and helped to check to some degree her gross and habitual intemperance, she moved into more respectable habitations and succeeded in accumulating eight or nine thousand dollars, out of which came the $5,000 paid for the house and various donations from time to time made to her children, and about $1,800 remaining on hand at her death.    During the greater portion of her residence in Baltimore all of her children except Mrs. Baulsir, who was a travelling variety actress, lived with her in one household largely at her expense and formed a not particularly harmonious family.    The evidence in the case was furnished chiefly by the parties to the suit, servants who had been in their employ, customers who had purchased "medicines" from Mrs. Speights, and family friends and associates.

It is somewhat difficult to arrive at an entirely satisfactory conclusion from the testimony before us but we are of opinion that the preponderance of the evidence, even after giving to the appellees the benefit of the evidence excepted to by the appellants, is against the existence of an agreement on the

part of Kennedy to secure the repayment to his mother of the $5,000, by a mortgage on the property, and is in favor of his contention that the money was given to him absolutely by her that he might purchase a home.

Before the purchase of the house Mrs. Speighis declared to a number of persons her purpose to buy Kennedy a home of his own.    Charles G. Kizer testified that she told him in 1896, and again in 1900, that she desired Kennedy to remain in Baltimore with her and that "she had determined to provide him with sufficient funds to buy a home" in that city.    Mrs:. Linthicum testified that Mrs. Speights told her that she had to depend on John for everything, that he stuck by her and that she would reward him one day, and also frequently said, that she wanted him "to take the money and buy a home of his own," that "if it had not been for him she could not have saved as much as she did and she thought she ought to reward him."    Mrs. Reddish testified that Mrs. Speights said to her before the house was purchased, "I intend to give him (Kennedy) money enough to buy a home for himself and I expect to live with him the balance of my days," that the house was on Broadway and she had not yet seen it but "what suit him suited her."    James A. Ball testified that she had often told him that "she was going to give him (Kennedy) money to buy him a home."    These witnesses were all disinterested and their testimony is uncontradiced.    Both of Mrs. Speights' sons, John and James, the latter against his own interest, testify to similar statements made by her anterior to the purchase of the house.

As to the circumstances of the actual gift of the money the only direct testimony is that of the interested parties who contradict each other.    Both of the sons testify positively that she gave Kennedy the money as an absolute gift for his own use, and that she so declared at the time.    The son James L. Speights testified that the $5,000 had been in his keeping for four or five months before the house was bought and that his mother told him two or three times that she was going to give it to Kennedy to buy a house, and that two or three days be-

fore the house on Broadway was purchased she asked him to get the money, which he did, and she gave it to Kennedy, saying at the time, "Son this is yours," and his testimony was corroborated by that of his wife, Capitola Speights.   Mrs. Warren, one of the daughters, contradicted this account of the transaction, and testified that on the day referred to Kennedy came to the door of the room where she and her mother were and said, "Mother I am ready to go and buy that property for you," whereupon her mother went up-stairs to her trunk and unlocked it and took out her money and counted out the $5,000 and something over and handed it to Kennedy and told him he would have to pay something for having the record searched and to bring back what was left.

A number of disinterested witnesses testified that, after the purchase had been made and she and the children had moved into the house, she told them in the most positive terms that she had bought the house for her son Kennedy, and "had put it in his name because he was a good son to her and took care of her when no one else did, all the girls had left her and would not do anything for her, that the house was not hers, it was Mr. Kennedy's, "that she had made John a present of the money to buy the house," and used other similar expressions in speaking of the property.   Other witnesses testified that she told them after the house had been bought that she was to have had a mortgage on it from Kennedy for the $5,000 which she furnished to pay for it and that he had promised to give her the mortgage, but kept putting her off with promises and never gave it to her.   Other witnesses testified that she told them that she was perfectly satisfied with the way the title to the house stood and that she was only pretending to want the mortgage in order to satisfy her daughters, who objected to Kennedy's having the house.   There was also uncontradicted evidence in the case which, if true, revealed a family history that would naturally have led the mother to feel less interested in her daughters than in her sons.

Charles J. Hull, a member of the bar, testified that on Feb-

ruary 22nd, 1902, he went to see Mrs. Speights, at the request of her son in-law Warren, and at her direction drew a mortgage from Kennedy to her on the Broadway house to secure a note for $5,000 to her dated July 10th, 1901, and signed "John M. Kennedy," and left the mortgage with her and that subsequently she told him that Kennedy had refused to sign it and that it had been lost or mislaid. There is however no proof of the genuineness of the signature to the alleged note, nor any direct evidence that Kennedy ever saw it or the mortgage or knew of their existence or was requested by his mother to execute the mortgage. He testified categorically that he never made any such note and never saw the mortgage and was never requested by his mother to execute it. James L. Speights testified that when his mother got the mortgage from Mr. Hull she requested him to read it to her and he started to do so, but before he had finished reading it "she took it and threw it on the table and said the house was exactly as she wanted it to be and she did not want Mr. Kennedy to sign anything."

There seems to have been no secrecy or concealment practiced in transferring the title to the property into the names of the sons, as the mother was evidently aware of it at the time, and the deed and lease as soon as they were obtained from the record office were taken home to the house and allowed to lie open to the inspection of the other members of the household. It is further to be observed that although Mrs. Speights lived for nearly two years after the purchase of the house, with full knowledge that it had been conveyed to her sons, she took no steps in her lifetime to compel a transfer of the title to herself or a recognition of any equitable estate to which she may have been entitled in the property, nor exhibited any indignation or displeasure toward her son who retained the title to the house in his own name.

Under these circumstances the claim of the appellees, in order to entitle it to our favorable consideration, should be established by clear proof or at least by a strong and satisfactory preponderance of evidence. We have already said that

in our judgment the appellees have failed to prove the alleged agreement for a mortgage, but the weight of the evidence is in favor of the appellant's assertion that the $5,000 was voluntarily given by Mrs. Speights to the appellant, John M. Kennedy, to enable him to purchase the Broadway house for a home of his own.

Of course if the money was thus given to him absolutely for his own use no resulting trust could have arisen in favor of his mother out of the purchase of the house. Without pausing to consider the sufficiency of the allegations of the bill as a foundation for the declaration of a resulting trust in the property, the evidence does not show that the mother was mentally incapable at the time of the gift, or was under the dominion or control of the son, or that he occupied confidential relations to her, or had the custody or control of her money or property, or that he attempted to interfere with her personal liberty or prevent free access to and full intercourse with her on the part of any of the other members of the family. In the absence of mental incapacity on her part, or fraudulent conduct or confidential relations on his part, the mere fact that he was her son does not raise any presumption of the invalidity of the gift of the money to him. *Bauer* v. *Bauer,* 82 Md. 241; *Reed* v. *Reed,* ante p. 138; *Eakle* v. *Reynolds,* 54 Md. 305; *Gunther* v. *Gunther,* 69 Md. 560. Nor does the fact that by the gift to a particular child the donor deprived herself of the means of making equally large donations to her other children render it invalid, for the law concedes to a person of sound mind the right to dispose of his property in any manner he may deem proper not inconsistent with its policy. *Gesell* v. *Baugher,* 100 Md. 677, and cases there cited.

For the reasons which we have stated the decree appealed from must be reversed and as it appears from the record that the appellees are not entitled to any relief against the appellants or any of them in the premises the bill will be dismissed.

*Decree reversed with costs and bill dismissed.*

(Decided June 23rd, 1905.)