# ELIZA SIMPSON *vs.* JOHN S. LEAGUE AND MARILLA LEAGUE—JOHN S. LEAGUE AND MARILLA LEAGUE *vs.* ELIZA SIMPSON.

### *Gifts—Undue Influence—Evidence.*

Plaintiff, a woman over eighty years of age, without relations nearer than a sister of the half blood, in pursuance of a pur-pose entertained by her for a long time to give her property to the defendant, executed an absolute deed to him of two houses, and withdrew a large sum of money deposited in her name in savings banks, and re-deposited the same in her own name,

in trust for herself and the defendant, the balance, at the death of either, to belong to the survivor. Afterwards the defendant caused the title to the houses to be conveyed to himself and his wife, and withdrew a part of the money from the savings bank and re-deposited it in the names of himself and wife, and drew out other money from the bank, using part of it in the purchase of a house. Plaintiff's bill in this case alleged that these gifts had been obtained from her by the exercise of undue influence by the defendant, and that she did not understand the nature of her acts, and asked for a decree annulling the transfers. Upon an examination of the evidence, *held,* that the gifts as originally made were not obtained by undue influence, but were the voluntary act of the donor, and that she understood the nature of the transaction, but that her intention was that she should retain a life interest in the money in the bank and that it should be the property of the defendant only in case of her death; that the defendant was not authorized to draw the money from the bank or to place such deposit in the names of himself and wife; that the plaintiff is entitled to have the money remaining in the savings bank, and the house purchased by the defendant with money withdrawn from the bank so placed as to be subject to plaintiff's life interest therein.

*Decided March 24th, 1909.*

Appeals from the Circuit Court No. 2 of Baltimore City (GORTER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*George R. Willis* and *Luther M. R. Willis* (with whom was *James McEvoy* on the brief), for Eliza Simpson.

*James W. Denny,* for John S. League and wife.

SCHMUCKER, J., delivered the opinion of the Court.

The record before us presents for our consideration cross-appeals taken by the plaintiff and certain of the defendants from a decree of Circuit Court No. 2 of Baltimore City. The bill in the case was filed by Eliza Simpson, an aged and illiterate woman, to procure a decree setting aside certain gifts made by her, of real estate and money in savings banks, upon the alleged ground that in making them she had acted under undue pressure from the donees and without a proper understanding of the true nature of her own acts. The substance of the allegations of the bill may be stated as follows:

In the latter part of the year 1907 the plaintiff being then over eighty years of age, unmarried and without relatives nearer than a sister of the half blood, was seised·in fee of two houses and lots in Baltimore City, known as No. 1028 Granby street and No. 220 South Ann street, and possessed of $30,135.32 deposited to her credit in the Savings Bank of Baltimore and $6,402.31 deposited to her credit in the Eutaw Savings Bank. In the month of September in that year she had her last will prepared by Harry E. Mann, Esq., her solicitor, which she duly executed and lodged for safe keeping with the Register of Wills of Baltimore City. She was thereafter persuaded and led to believe by the defendant John Simpson League, who was an acquaintance but no blood relation, that in all probability any will made by her at that time of life would be contested and set aside by reason of her infirm condition, and was also influenced and persuaded by him that it would be better for her to place her property under his control and management during her lifetime.

For the purpose of putting him in control of her property she, on September 16th, 1907, withdrew all of the money to her credit in the savings banks and redeposited it in the same banks in her own name in trust for herself and John S. League joint owners subject to the order of either the balance at the death of either to belong to the survivor, and also di-rected her counsel to prepare a deed conveying absolutely from her to the said League the houses on Granby and Ann.

streets, and that on the 3rd of October, 1907, she executed the deed and delivered it to him.

On or about February 18th, 1908, in breach of the confidence she had reposed in him and with the intent to deprive her of her property League had the title to the two houses conveyed to himself and his wife Marilla League as tenants by the entireties, and also withdrew $28,876.66 of the money in the Savings Bank of Baltimore and redeposited it therein to his own credit in trust for himself and his wife joint owners subject to the order of either and at the death of either of them to belong to the other, and on the 14th of March, 1908, he withdrew $5,000 from the said bank account and applied it to his own use. It is further alleged that League has possession of the bank books for all of the money remaining in the saving banks, although the bill does not say how they got into his possession, and that there remains in the Eutaw Savings Bank but $1,258.34 of the money which was deposited there on September 16th to the joint credit of the plaintiff and League and the survivor of them in the manner already stated.

The bill then alleges that by the transactions mentioned the plaintiff has through the cunning and wicked influences of League, been deprived of her entire estate and reduced to a condition of poverty and dependence upon strangers for her support, but it does not allege that the plaintiff ever notified League of her dissatisfaction with what she had done in reference to her property, or requested its return to her, or the delivery to her of the bank books for the money in the banks or protested to League against his making drafts therefrom.

League and his wife and the two savings banks are made defendants to the bill which prays for a decree, declaring void the deeds of the two houses, and requiring League and his wife to transfer to the plaintiff the money still remaining in the savings banks, and for an injunction *pendente lite* restraining the banks from paying out any of it and for general relief.

The answers of the banks admitted the deposits and withdrawals of money mentioned in the bill but asserted their ignorance of the other matters therein alleged.

The joint answer of League and wife admitted the execution of the deed of the two houses to League and the several transfers of the funds in the savings banks in the bill mentioned, but they categorically denied that such of those transactions as had been made by the plaintiff had been made by her at their instance or request or upon their advice or otherwise than of her own free will, and also asserted that those of said transactions which had been made by them or either of them had been done honestly and openly and either with the plaintiff's previous authority or subsequent approval. They emphatically denied that they or either of them had ever directly or indirectly connived at or used any wicked or other influence or suggestion to the plaintiff to dispose of her property to them or either of them. On the contrary they asserted that the plaintiff's gifts of property and money to them and her transactions incident thereto were her own voluntary and well understood acts performed under the direction of her own counsel in fulfilment of her long cherished and often expressed intentions, and that after she had made the dispositions of property and money in the bill mentioned, in their favor she on different occasions stated to third persons that she had done what she intended to do and that she had retained all that she needed for her wants in money and city stock.

By way of explanation of the plaintiff's gifts of property and money to them the answer of League and wife asserts the existence of a state of facts of which the material portions are as follows: The plaintiff had known them both well from childhood up and had always called John Simpson League her nephew because he was named after her deceased brother. She was present at their marriage and had then and at other times given presents to them and their children. When their first son was born seventeen years ago she gave him a watch and said that he should be educated as a doctor and when his

father said, how can I educate him as a doctor when I am
making only $12 a week, the plaintiff replied "I have the
money and have no other relations and I intend to give it all
to you." Early in September, 1907, after having uniformly
for some years declared her intention to give League her
property, she informed him and his wife that she would de-
lay no longer but meant to go to see her lawyer Harry E.
Mann, whom she had known when he was a boy, to transact
the business. She went to the office of Mr. Mann, whom the
defendants had never known, and had him prepare a will,
which she executed, out of League's presence, giving him her
entire estate and naming him as her executor without bond,
and deposited it with the Register of Wills and gave League
the ticket for it. Sometime thereafter without any sugges-
tion from League or wife she told them that she had been in-
formed that a will would have to go through the Orphans'
Court, which she did not desire, and that as she had ample
means in cash in her house and city stock she had concluded
to convey her two houses to League.

The answer further avers the actual conveyance of the
houses to League and also the transfer by the plaintiff of the
money in the savings bank to the joint credit of herself and
League and the survivor and the delivery of the bank books
therefor by her to him, and avers that the subsequent trans-
fer of the Bank of Baltimore account by him to the credit of
himself and his wife and the survivor was made by the direc-
tion of the plaintiff after she had arranged to go with them
to make the transfer but was prevented from doing so by a
temporary lameness. She assigned as a reason, for directing
the last mentioned transfer of the account in the Savings
Bank of Baltimore to be made, that from the nature of
League's employment in operating railroad trains he was
liable to be killed at anytime before her own death and in that
event she desired his wife to have the property. It is fur-
ther averred that the $5,000 was withdrawn from the Balti-
more Savings Bank by League with her approval and that the
greater portion of it was applied to the purchase and equip-

ment of a dwelling on Luzerne street for him and his family with whom it was expected that the plaintiff would reside.

The testimony in the case, of which we will speak hereafter, having been taken and the case heard, the learned Judge below was of the opinion that the conveyance by the plaintiff to the defendant of the two houses and also the transfer by her of the Savings Bank accounts in trust for the joint benefit of herself and League and the survivor were valid, but he did not think that League had the right to draw the money that he drew from the Eutaw Savings Bank and appropriate it to his own use and that he should be required to return the amount so drawn to the joint account. The learned Judge further found that the plaintiff did not authorize League to change as he did the account in the Saving Bank of Baltimore but merely authorized him to substitute his wife in his own place upon his death as to that account, and that the form of that account should be so modified as to effect that result and League should be required to restore to that acount the money drawn by him therefrom, and applied to his own use, but not so much thereof as he had expended for the plaintiff, and that a transfer of the title to the Luzerne street house so that it will be held in the same manner that the money in the Savings Bank of Baltimore is directed to be held should be treated as a return by him to that bank account of the $3,100, which was expended in the purchase of that house. A decree in accordance with these conclusions having been passed in the Court below the plaintiff and the defendants League and wife took the cross-appeals therefrom which are now under consideration.

The case before us resolves itself, as such cases generally do, into a question of fact, the legal propositions controlling its determination being well settled. When the aid of a Court of equity is invoked to pass upon the validity of a mere gift, without substantial consideration, made by an aged and ignorant person of what constitutes almost his or her entire estate, the transaction will be closely scrutinized and, unless it be clearly shown that the donor possessed the requisite

legal capacity and acted freely and without undue influence or constraint in making the gift, it will not be upheld. The Court in such cases will consider not only the condition of the donor "at the time of the execution of the instrument and the circumstances of the execution itself  *  *  *  but also his previous life, habits and relation to others, so as to ascertain the natural or probable objects of his bounty and especially to discover his settled purpose, if he had any, in regard to the disposal of his estate." Where fiduciary relations existed between the parties to the transaction the burden has uniformly been placed upon the donee to establish to the satisfaction of the Court the facts necessary to uphold the gift. *Colgate Owings Case,* 1 Bland, 345; *Highberger* v. *Stiffler,* 21 Md. 338; *Todd* v. *Grove,* 33 Md. 188; *Cherbonnier* v. *Evitts,* 56 Md. 276; *Zimmerman* v. *Bitner,* 79 Md. 115; *Reed* v. *Reed,* 82 Md. 138.

On the other hand it is equally clear that the law concedes to a person of sound mind the right to dispose of his property in any manner he may deem proper, not inconsistent with its policies, and with such a person, where there is an absence of fraud or imposition, there is no such thing as an equitable incapacity and a gift voluntarily made and completed by him will not be set aside because he subsequently changes his mind and regrets the transaction or because the Court regards his act as absurd or improvident. *Kennedy* v. *McCann,* 101 Md. 651; *Bauer* v. *Bauer,* 82 Md. 241; *Reed* v. *Reed, supra, Gunther* v. *Gunther,* 69 Md. 560; *Goodwin* v. *White,* 59 Md. 509; *Vitters* v. *Beaumont,* 1 Vernon, 100; *Wilson* v. *Farquharson,* 5 Md. 139.

We have read and considered all of the voluminous evidence contained in the record and, without undertaking a complete review of it or mentioning all of the facts and circumstances which influenced our judgment, we will state the conclusions, material to the issue, to which its consideration has brought us. The plaintiff to support her case introduced her own testimony and that of her counsel, Harry E. Mann. Although her testimony displays some shrewdness and affords

proof of the possession on her part of capacity adequate to the performance of the current and ordinary transactions of life, it is often inconsistent and contradictory and at times almost incoherent and cannot be regarded as of great probative force, but that of Mr. Mann, who was conceded to be an upright and reputable member of the bar, is clear and direct and supplies a reliable basis upon which to found a solution of the case. The plaintiff also produced two witnesses in rebuttal whose testimony tended to corroborate her own evidence in not very important particulars.

The defendants League and wife both went upon the stand on their own behalf and put upon the stand the Vice-President of one of the savings banks; and also four of the friends and neighbors of the plaintiff who testified to declarations made by her at various times in their presence touching her purpose to make League and his wife the sole beneficiaries of her estate.

We think that the evidence acquits both League and his wife of the charges of having induced the plaintiff to make the gifts in controversy by the exertion of undue influence or the practice of fraud upon her, and that their validity must be tested by the possession on her part of a sound mind and the intelligent exercise of her will when she made them.

We are satisfied from the evidenc that, although no family connection or fiduciary relation existed between the plaintiff and League, they had long been on friendly terms, and that she was wont to call him her nephew and had for a number of years entertained and had frequently expressed a settled purpose to make him the ultimate beneficiary of her estate. And that in the execution of that purpose she went to her counsel's office on September 4, 1907, and had him prepare a will, which she executed, giving her entire estate to League and making him her executor without bond, and that she was competent to make the will.

We are also satisfied that, having become apprehensive that if her will were relied upon as a means of transferring her estate to League at her death her purpose might be defeated

by an assault upon the will after her death, she again consulted her counsel to ascertain if she could not adopt some better means of transferring her estate to League, and that, as a result of that interview, she adopted the plan of an immediate conveyance to him of the two houses and a transfer of the money in the savings banks. We also think that she was then competent to make those transactions and that she fully understood the force and effect of the deed, which was a simple and absolute conveyance, and that a good title to the two houses and the lots on which they stood was thereby vested in League.

We are, however, not entirely satisfied that she then understood the full effect of the somewhat complex form, adopted for the bank deposit, or that, when made, it accomplished the purpose which had been predominant in her mind for some years. Mr. Mann said, in his account of her interview with him at that time: "She then asked me if the will could be objected to by anyone. I told her anybody in interest that had proper grounds for objecting to the will could object to it. She then said she did not want it that way. I told her, then the only way to avoid the Orphans' Court would be to leave no estate, and she then instructed me to prepare a deed conveying the property on Ann street and on Granby street to Mr. League, *and I told her that the deposit in the savings bank could be arranged in such a way that in case of her death Mr. League could draw the money."*

He also testified that the form of deposit for the money in the savings banks was suggested and advised by him, and that he supervised and directed its execution at the Savings Bank of Baltimore, and that the form there used was followed at the Eutaw Savings Bank, but that her mind was made up to convey the two pieces of property when she came to his office, and that she seemed to him to be entirely competent to make the deed.

The testimony upon that subject when considered together leads rather to the conclusion that her purpose in changing the form of the bank deposits was to so place the money that

Mr. League could withdraw it *in case of her death,* and that she did not intend to give him authority to draw it out during her lifetime.

Nor do we regard as conclusive the evidence offered to prove that the plaintiff authorized the subsequent transfer by League of the money in the Savings Bank of Baltimore to the credit of himself as trustee for the joint use of himself and wife and the survivor. League and his wife both testified, in substance, that the plaintiff informed them that, in view of the hazardous character of his occupation and the possibility of his being suddenly killed in her lifetime and the consequent frustration of her purpose in reference to the money in the banks, she wished the account so changed that the money would stand to the joint credit of him and his wife, and that she fixed a day to go with them to the bank for that purpose, but was unable to go because of a sore ankle, and directed them to go without her and have the change made. In corroboration of their own testimony they produced three witnesses, Michael Feller and his wife and Joseph M. Kehoe, all of whom were present when League and his wife called for the plaintiff to go with them to the savings bank to change the account, and she stated her inability to go, because of her lameness, and directed them to go by themselves and have the change made. According to the testimony of these three witnesses they were in the same room with the plaintiff, when League and his wife called for her to go to the savings bank to change the form of the account, and overheard the conversation between them.

The respective versions of that conversation given by the witnesses are as folows: Kehoe said: "When they came in. they said to Miss Simpson, they said, Aunt Eliza we are ready now to go the bank, are you ready to go with us." She said, no, I cannot go. She said, you go and have Lillie's (Mrs. League's) name put on the bank book and whatever you do I will be perfectly satisfied with." Feller gives it . thus: "As far as I can understand, Mr. League said we are ready to do as you asked us to do last night and we wish

you to go with us, you asked me to put Lillie's name on the bank book." She said, "Lillie, Honey, I cannot go my ankle is score. She said you go and have it done and I will be satisfied." Mrs. Feller's account of the interview is: "Mr. League came in and said Aunt Eliza we want you to go up to the bank and do as you bid us do last night and put Mrs. League's name on the book. She said no Lillie, Honey, you go and let John put your name on the book, I have a sore ankle and I know what John does, he does right. She said go on John, Honey. I (the witness) said, do you know what you are doing? She said, I am perfectly satisfied."

League also testified that after the bank account had been transferred to the joint use of himself and wife he exhibited the bank book to the plaintiff and read her the entry showing the form of the deposit and that to use his own words, "she says she is now satisfied to die tonight, that everything was fixed *as she did at first intend to have it fixed.*" As the plaintiff's first intention with reference to her money in the saving banks was to give it to League only after her .death, she evidently failed to appreciate the real significance of the successive changes made in the form of its deposit, and her apparent authorization of or acquiescence in them ·lacked the intelligent understanding of the true nature of her acts requisite to sustain a voluntary gift, by one in her condition, of substantially her entire estate.

Our conclusion therefore, upon this branch of the case, is that the plaintiff while not entitled upon the evidence to an ·entire rescission or annulment of her transfer to League of the money in the savings banks is entitled to have the transfers so modified as to carry out her original intention of making the gift of that money to him, so far as it still remains in the banks subject to her own life estate therein.

With reference to the money drawn out of the banks by League, in exercise of the power conferred on him by the ·changed form of deposit made at her instance and request, he should be required to redeposit, in the banks from which it

was drawn, to ·his credit subject to a life estate in her, so
much of such money as he can be shown to have had on hand
at the institution of this suit.    He admits in his own testi-
mony that he had $1,500 of the money on hand at that time.
He should also be required to convey to the plaintiff a life
estate in the Luzerne street house which he admits to have
purchased with $3,100 of the money drawn from the savings
banks.

Inasmuch however ·as the plaintiff did in fact without the
exercise of undue influence or fraud on the part of League
have the money in those banks transferred to the joint credit
of herself and him with power to either to draw upon it and
gave him the bank books and was aware of the fact that he
was .drawing upon the account for certain purposes and did
not object to his exercising the power or notify him to dis-
continue to· exercise it or at any time prior to the institution
of this suit demand a surrennder to her of the bank books or
a rescission of the transfer of the accounts, we think that he
should not be required to make good or restore such· portion
of the money drawn by him from the banks or either of them
as he can show that  he had expended either for her account
or for the benefit of himself and his family prior to the in-
stitution of the suit.

The disposition of the case upon which we have thus deter-
mined will give to the plaintiff the income produced during
her life of so much of the money which she originally had in
the savings banks or its proceeds as can be identified and will
secure to League the remainder therein after her death, and
thus accomplish as nearly as can now be done, without in-
justice, her long cherished and often expressed purpose of
making League the ultimate beneficiary of her estate when
she can no longer enjoy it herself.

As the conclusion which we have reached differs somewhat
from that arrived at by the learned Judge below it becomes
necessary to affirm the decree appealed from so far as relates
to the houses on Ann and Granby streets and reverse it in

other respects and remand the case for further proceedings
in accordance with this opinion.

> *Decree affirmed in part and reversed in*
> *part and case remanded for further pre-*
> *ceedings in accordance with this opin-*
> *ion the costs of the case to be paid in*
> *equal portions by the plaintiff and the*
> *defendant John S. League.*