## CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

———

Filed November 3, 1920.

———

MARIE FLOYD AND JOHN WEISS
VS.
BERTHA SLAWSON, ET AL.

———

*O'Mara, Angelmier, Podlich & Arnold* for plaintiffs.

*T. Lyde Mason, Fisher & Fisher, Henry B. Mann* and *F. J. Hoen* for defendants.

DAWKINS, J.—

In this case it is charged that a certain Michael Weiss, the father of all of the individual parties to the suit, was of unsound mind for twenty-seven years prior to his death and incapable of executing a valid deed or contract and unable to conduct any business matters, and that during this incapacity, one of the respondents, Bertha Slawson, by undue influence, and through fraud, deceit and misrepresentation, procured and caused the said Michael Weiss to place all of his money on deposit in a building association and bank aggregating $3,000, in the joint names of said Bertha Slawson and Michael Weiss and to the survivor of them as joint owners.

The bill prays that said transfer be annulled and set aside, and that the said sum of money may be declared

to be the sole property of the said Michael Weiss, and as such to be distributed as an asset of his estate.

The defendant, Bertha Slawson, denies any undue influence over, or want of mental capacity in the father; but asserts that the account in the building association was changed by him entirely of his own free will, and that the father withdrew the money himself from the savings bank and gave it to her, and she deposited it with the association.

The building association asserts that Michael Weiss ordered and directed his personal account to be discontinued and to carry and hold the account in the name of himself and daughter.

The association says that the account was carried for twenty years by Michael Weiss, and that it was added to and taken from on various occasions during that period without any evidence of mental unsoundness. The bank says that Michael Weiss carried the account with it from 1915 until just before his death, during which period he appeared to be of sound mind and able to conduct business affairs indicating no mental deficiency. The signature in the pass book of the building association is written in a specially strong hand for a man with no English education.

Michael Weiss and his wife were divorced about 27 years ago. The children appear to have separated. None seem to have paid a very great deal of attention to the father, who spent much of his time working on a farm. The plaintiff, Mrs. Floyd, testified that she had seen him but three times in 20 years and she would not have known him had she met him on the street. She had dropped the name of the father, and did not know his appearance, etc.

The other plaintiff, John Weiss, saw him more frequently, but in no way manifested any special affection or regard for the father, or gave him any particular attention. The mother of John (the former wife) did not attend the funeral or have any communication with Michael Weiss. She raised the plaintiffs, but kept them from the father. The witnesses who testified for the plaintiff were practically related to the plaintiffs or directly interested in them. It will hardly be profitable to review their testimony. There is no evidence to establish any

undue influence, deceit or misrepresentation. If fraud can be presumed, it must be based on the fact of Michael Weiss' mental weakness, and the fact that the money was transferred during or about the time of his last illness.

What is the testimony to establish this fraud or mental incapacity? Persons went to the house and did not see him, because he was asleep. At times he laughed and talked to himself. He wandered around. He fed horses at night. Said people were after him. He acted "silly," though did not act "silly" all the time. He could not transact business. Would "holler and laugh" to himself. He talked religion. Never read paper except in German. Did not count money when given to him. Much of the testimony was denied in the answers, already referred to, and by a number of *wholly disinterested witnesses*. Dr. Hearn, the only medical witness offered, says that he attended him (Michael Weiss) to the time of his death. He died of bronchial pneumonia. His mind was perfectly clear up to two or three days before his death; answered questions intelligently; never acted "silly" nor did anything to indicate mental trouble. He could understand contents of a deed. Mr. Mason and Mr. Fox explained the manner of his intelligent dealing with the association, his comments on supposed errors, in interest, etc. Besides these gentlemen, the three ladies outside of the family saw nothing wrong about his mind. Mr. and Mrs. Slawson tell how the money was drawn by the deceased of his own accord, and given to Mrs. Slawson, because she was the only one who cared for him. It may be possible that the money transfer was talked over by the deceased and the defendant (Mrs. Slawson). It may be that the kindness shown him when no one else would take him in and care for him, influenced him to reward her, but with no one having any claim on his bounty, because of the family disruption (the son did not provide for him), why should he not have the right to do as he wished with his own? He had been economical and thrifty. He had mind enough to take care of his meagre earnings sufficiently to save $3,000. Nobody probably knew what he had until after he died.

Considering all that is claimed by the plaintiffs to be true, can the things

they say of the deceased fairly be said to be more than peculiarities, eccentricities or the like? If so, they are not sufficient to set aside the transfer. 133 Md. 392, Wood vs. Hankey.

How far "silliness," childishness or delusions make a person mentally incapable is so fully discussed in the Berry will case, 93 Md. 562, that the law seems to be well established. These things alone do not render a person mentally incapacitated. Here we have a man of 63 years of age, who went about his daily tasks, took care of himself and his money, with no one dependent upon him and no one caring for him. It was very natural for him to turn over to the daughter, who had befriended him, what he had. If she was directing the transfer she could have placed it in her own name, but she did not do it.

The fact that a person gives the greater portion of his estate even to a grandson to the exclusion of his children does not invalidate the will if he had the requisite mental capacity and the gift was free from undue influence. The law concedes to a man of sound mind the right to dispose of his property as he may deem proper not inconsistent with the policy of the law. The undue influence must be shown by the person charging it. 100 Md. 686, Gesell vs. Baugher; 101 Md. 643, Kennedy vs. McCann.

In a case of this character the burden of proof is on those attacking the conveyance. This burden has not been met.

The bill will be dismissed.