LYDIA B. NEALON *v.* HAROLD V. TRAVERS.
[No. 86, October Term, 1930.]

*Decided January 16th, 1931.*

330

The case was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*A. Freeborn Brown,* for the appellant.

*Frederick Lee Cobourn,* with whom was *Ernest Volkart* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

Lydia B. Nealon, a widow of many years, had a son, David Nealon, and a daughter, Katie M. Nealon, who married Harold V. Travers in. February, 1914. The mother went to live with the newly wed pair, and the family relations were happy until the accidental death of the daughter on May 10th, 1927. After her death, the mother-in-law continued to live at the home, although differences arose.

One controversy is presented by this appeal, and it grew out of an improved lot in Aberdeen which had been conveyed to the husband and wife as tenants by the entireties on August 26th, 1918. About four years later the fee simple property was conveyed to the wife in severalty, and it so remained until her death intestate and without issue, when it vested by law in her mother and her husband as tenants in common. On May 18th, 1927, which was eight days after the daughter's death, the mother-in-law conveyed her estate in the realty to the son-in-law, who, on August 24th, 1928, conveyed by mortgage deed the land and improvements to the First National Bank of Aberdeen as security for his debt to it of $1,200. There was no change affecting the title until March 19th, 1930, when Lydia B. Nealon began a suit in equity against Harold V. Travers to have her deed to him set aside on the ground that it had been procured from her by fraud. The chancellor heard the testimony and dismissed

the bill, and an examination of the record affords no basis for a disagreement.

The grant is without valuable consideration, but it is valid as a gift, unless there be some equity shown to set it aside. *Cunningham v. Dwyer,* 23 Md. 231; *Simpson v. League,* 110 Md. 286, 72 A. 1109; *Combs v. Scharf,* 143 Md. 74, 121 A. 857. Even if the gift were improvident, the donee unworthy, and the donor now desirous of recalling her bounty, equity will not, on these grounds, rescind a deed of gift. *Simpson v. League,* 110 Md. 286, 72 A. 1109; *Combs v. Scharf,* 143 Md. 74, 121 A. 857; *Goodwin v. White,* 59 Md. 509.

After her daughter's funeral, the plaintiff pictures the defendant as coming to her in tears, crying that the plaintiff could compel a sale of the property, and that she told him, in the presence of her son, who had come to attend his sister's burial, that she would not adopt such a course, and that it was then agreed that the defendant should have a paper writing prepared for their joint execution that would prevent the property from being sold during the plaintiff's life, and providing for its sale at her death and that her share should pass to her son. The son's version of the understanding is similar to his mother's, except that the property was not to be sold during their joint lives, but was to be sold on the death of either. A few days afterwards the deed in controversy was brought to the house. The plaintiff and defendant, and Ernest Volkart, Esq., the latter's attorney and the deed's draughtsman, and Dorsey F. Rowe, a notary public, were the only persons present. The plaintiff's testimony is that she and the defendant were at home at night when the attorney and the notary came with the deed, which she asserted was neither read nor its contents or effect explained, and that she was simply handed the pen, the place for her signature pointed out by the attorney, and directed to sign, which she did without reading the instrument or making any inquiry in reference to it, under the impression that the document was to carry into effect her version of the understanding with the defendant, and that she never discovered

the nature of her act until some time between the last of January and the first of February, 1930.

The testimony on the part of the plaintiff was that, without either reading, or having read to her the instrument, or having made any inquiry as to its purport and necessity, or seeking any explanation of its effect, she voluntarily signed, executed, and delivered the deed in question. Whether this evidence does not establish such negligence as to deny the plaintiff the relief sought need not be considered, since the weight of the testimony clearly established that the antecedent and immediate circumstances associated with the gift are not as stated by the plaintiff and her son. The defendant denied the preliminary conversation which the plaintiff and her son testified had occurred. His version is that the son was not present, and that the plaintiff had expressed to him a desire that her interest in the property should be conveyed to him, and that he should have a deed prepared for that purpose. He is corroborated in this by the subsequent events. The deed was so prepared and brought to the home for execution. The husband, the attorney, an experienced and reputable member of the bar, the notary public, a wholly disinterested witness, unite in testifying that the deed was read to the plaintiff in a loud voice, at her request, as she was slightly deaf; that the contents, purpose, and operation of the deed were made known to the plaintiff and fully explained to her; and that she did not sign and execute the deed until she had declared that she fully understood her act and its consequences. Furthermore, two disinterested witnesses testified in the cause to two different declarations, in each of which the plaintiff volunteered the information that she had made a deed of gift to the defendant of her interest in the land that she had derived from her daughter, because the property had belonged to the defendant and his wife and she desired the defendant to have it all.

The plaintiff was about sixty-eight years of age at the time of the gift. She was a boarding house keeper of experience, and her testimony and appearance caused the chancellor to characterize her in his opinion as a woman of more than

average intelligence. During the daughter's life and until after the making of the deed assailed, the parties lived together in complete harmony, and the gift is entirely consistent with the attitude of the two parties to the grant and the natural sentiments of the grantor at the time. The difficulties came later. In view of the convincing evidence on the part of the defendant, the conclusion is imperative that no equity has been established by the complainant, so the decree must be affirmed. *Young v. Murray,* 159 Md. 556, 152 A. 111; *Schmidt v. Johnston,* 160 Md. 285, 153 A. 29.

*Decree affirmed, with costs.*