(Decided 10th January, 1889.)

---

THOMAS WORTHINGTON, and others *vs.* P. HANSON HISS, and others. WILLIAM J. HISS, and others, Trustees of PHILIP HISS, and others *vs.* THOMAS WORTHINGTON, and others.

*Partition—Mesne profits—Measure of Recovery—Proceedings in Equity for Mesne profits—Additional proofs—Re-statement of Accounts—Auditor—Practice in Equity.*

Where the title of the complainant in a suit for partition is denied, and the suit is prosecuted to a decree in his favor, the parties will stand in the same position on the taking of an account for mesne profits, as if the complainant had, after recovering in ejectment, brought an action for mesne profits.

And if the defendants be *bona fide* purchasers, and the controversy has been protracted without any fault on their part, the true rental value to be considered as the basis of compensation, is

Worthington, *et al. vs.* Hiss, *et al.*

such rental value or occupation rent as might fairly have been made by the defendants during the time of the ouster, by a valid lease of the property in its unimproved condition from year to year, or for a term equal to the period of ouster.

It is the plain duty of a Court of equity to allow further proof to come in at any time during the progress of a cause, when in its judgment the taking of such proof will subserve the ends of justice.

The Court on rejecting accounts stated by the auditor under a decree, and returning the case to him to state accounts as directed, may properly allow additional proofs to be taken, notwithstanding a restriction in the decree as to the time within which proof should be taken.

Where defendants in a partition proceeding are *bona fide* purchasers, and have put improvements on portions of the land, and have rented such portions by perpetual leases, the ground rents that are due to the enhanced value of the land consequent upon such improvements, are not to be charged to such defendants in taking an account of rents and profits.

APPEALS from the Circuit Court of Baltimore City.

These appeals were taken from an order of the Court below, (DENNIS, J.,) sustaining the exceptions of P. Hanson Hiss and others to the auditor's reports and accounts A, B, C and D, and rejecting the same, and overruling the exceptions of Thomas Worthington and others to the said accounts, except so far as said accounts A and B, are confirmed by said order. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, BRYAN, and McSHERRY, J.

*Julian I. Alexander,* for Worthington and others.

The Court will remember that this case was in fact an equitable ejectment, (see *Gittings vs. Worthington,* 67 *Md.,* 139.) It was argued below that the bill did not set up an ouster, and that there was no ouster until

the answers were filed, Hiss' answer being filed 15th
September, 1881.   But he (and every defendant, includ-
ing Gittings,) claimed the absolute title against us,
and that he had ousted us; for claim of title and ex-
clusive possession is ouster.   This Court said we ought
to have proceeded at law, but by agreement all objec-
tions to our proceeding were waved; we recovered the
land as in ejectment, and this Court said we were to
recover rents and profits from the accrual of our title
to the time of accounting.   *Long, et al. vs. Long, et al.,*
62 *Md.*, 74.

The case of *Henderson vs. Eason,* 70 *Eng. C. L.,* 715,
has no application here—the tenant in common there
claimed no exclusive title.   But the suggestion is
ludicrous that Hiss and the other defendants have all
along been our bailiffs!

Now the defendants were in possession during the
whole time from the accrual of our title till the assign-
ment in the partition, and the question is what is the
measure of the rents and profits to be allowed to us?
The length of time for which they are to be allowed
has been settled by this Court.   In *Aslin vs. Parker,*
2 *Burr.,* 665, *mesne* profits are spoken of by so great a
Judge as Lord MANSFIELD by the same term used in
the decree here "the value."

*Mesne* profits are but compensation in damages for
what the plaintiff has lost by being kept out of pos-
session of the land.   And the plaintiff may prove them
in one of two ways, either, 1. What has been re-
ceived; or 2, the annual rental value; and if he
selects the latter mode of proof, it is nothing to him
if the defendant did not rent the property.   If he
chose, as Mr. Hiss did, to reside on it, can he object
to the plaintiff that he did not lease it?   The law
indemnifies the plaintiff for what he has lost, by
being kept out of possession.   The law is the same

with personal property which has been converted, or money received to the plaintiff's use; interest is allowed. If these defendants had, when our title accrued, surrendered what was ours, we would have had it, and might have leased it. They chose to hold it against us, and must be visited with the consequences. Indeed, the only case where it is necessary there should be an actual receipt of rents is the action at law under the Statute of Anne.

Now the property in question is. city lots, by this Court decided to be substantially articles of merchandise, with a fixed market value like any other article. But the only use to be made of these is to build on them or sell them or lease them. Now John Bolgiano has built on his lot; he has therefore used that lot in which we had seven thirty-sixths interest from the time of the accrual of our title until our rights were ascertained under the commission for supporting his house, in which we had no interest. What is the annual value of a lot so circumstanced except its fair ground rent? Why should we be entitled to share in the ground rent actually reserved on the lot next to Bolgiano's, and only receive from Bolgiano what a yearly tenant would pay for the lot if the house were not on it, which, of course, would be pure speculation? But if we are entitled, as it is conceded, we are, to the annual value, how can we get it? We repeat: You cannot lease building lots in a residential part of the City of Baltimore, except for terms of ninety-nine years, renewable, the lessees to pay the taxes and yield a net annual rent; and the ordinary way of using such lots is to so lease them. The defendants claimed the land as their own, and had as much right to lease for ninety-nine years as they had to rent for one year. The argument seems at last to come to this—that if a man has an interest in land in the City of Baltimore

which he is compelled to sue for, he shall never recover *mesne* profits, for the allowance of rents as under a permanent lease would be unjust to the defendant, because, with the lawsuit no title could be made, and the allowance of the rent which a yearly tenant would give for the lot would be equally unjust to the defendant, since no title could be made that even a yearly tenant would be sure of, since it would be against public policy that the defendant should covenant to keep the lawsuit depending during the term.

But again in this case we have been compelled to acquiesce in the system of developing the property established by Mr. Hiss. Where he opened streets and dedicated them, we have confirmed the dedication, and gave up so much property. Why? Only in order to put the land in a shape for the application of the practice of dealing with it customary in the City of Baltimore. Reference may be had to *West vs. Hughes,* 1 *H. & J.,* 576–579; *Mitchell vs. Mitchell,* 10 *Md.,* 235, where the plaintiff proved the probable value of the land, and offered to prove the amount of net profits made by a contiguous landholder, which were treated as regular evidence. *McLaughlin vs. Barnum,* 31 *Md.,* 452; *Vandevoort vs. Gould,* 36 *N. Y.,* 646, approved in *New Orleans vs. Gaines,* 15 *Wall.,* 632; *Woodhull vs. Rosenthal, et al.,* 61 *N. Y.,* 382; *Wallace vs. Berdell, et al.,* 101 *N. Y.,* 16.

From which it appears, as the Court say, that it would be manifestly unjust to confine the owner of property recovered, to rents actually received by the other party. The plaintiff ought not to suffer by the mismanagement, negligence or improvident expenditure of the person in possession, and therefore the rental value of the premises is the rule, or what the premises are reasonably worth, with interest, to the time of trial. *Graham, et al. vs. Pierce,* 19 *Gratt.,* 28; 2 *Suther-*

Worthington, *et al. vs.* Hiss, *et al.*

*land on Damages,* 345, 346; *Barrell vs. Barrell,* 25 *N. J. Eq.,* 173; *Edsall vs. Merrill,* 37 *N. J. Eq.,* 114.

The auditor ought not to have allowed the plea of limitations as to any of the defendants—the plea of limitations not having been properly pleaded by any of them. In the answer of the Hisses—they plead that they *will rely* upon the provisions of the Code in respect to limitation of actions, &c., and so of the rest. The plea must contain sufficient positive affirmative averments to bring the case within the Statute. 1 *Dan. Ch. Prac.,* 654. Nothing of that sort is contained in these defences—and from *Murdoch vs. Winter,* 1 *Harr. & G.,* 471, a plea that the defendant did not promise within three years, was held bad.

*M. R. Walter, Arthur W. Machen,* and *S. Teackle Wallis,* for William J. Hiss and others.

A large part—nearly one-half—of the tract of land, which, as the decision in this case has established, belonged jointly to Philip Hiss, or his heirs or assigns, and to the Worthingtons and Knapps, remained unimproved down to the time of the partition. In the improvements, and the value derived from them, the plaintiffs had no interest; and the vacant portion being adequate, their share has been assigned to them, pursuant to the decree of this Court, out of it. An account of rents and profits, the plaintiffs are entitled to, as an incident of the suit for partition. What are the principles upon which it should be taken. It is an account in equity and between tenants in common. All the persons claiming in any way under Philip Hiss have been made parties to the suit; but, for the purpose of ascertaining the rights of the plaintiffs and the Knapp defendants in this accounting, the whole Hiss interest is to be treated as a unit. Certain attempted sub-divisions of the ground, by way of lease or assign-

ment, made by Philip Hiss, have given rise to equities *inter sese,* between his devisees and those grantees of his, but every such lease and every such assignment of particular parcels of the undivided tract was void, as concerns the plaintiffs. Had they been effectual grants of the respective lots, those lots would have been taken out of the original tract, and the partition would have been confined to the residue. The plaintiffs had a right to ignore them, and did ignore them, in filing a bill for the partition of the tract as an entirety; and a partition of the tract as an entirety has been in fact made. The account, therefore, when we regard the principles upon which it is to be stated, is to be considered as an account between one tenant in common, Philip Hiss, (or his representatives) and his co-tenants, the plaintiffs, heirs of Amelia J. Worthington, and those defendants who are heirs of Mary J. Knapp. The claimants' position involves the assertion that their co-tenant, or his representatives, have received more than his due share of rents and profits, and they ask for an ascertainment of the amounts due themselves, and a decree for the payment. Among themselves, those claiming under Hiss will bear the burden of payment (if anything is found to be due) in certain defined or ascertainable proportions as the decree of 23d of May, 1887, made provision for; but these relations and equities between themselves do not affect the right of the claimants, except so far as pleas of limitation may operate. In principle and substantially it is an accounting between Philip Hiss, or his representatives, on the one hand, and the claimants, Worthingtons and Knapps, on the other.

The first rule in such an accounting is, that the burden of the *affirmative* is upon the claimant to establish the fact of the perception of rents and profits by the co-tenant, in excess of his due proportion.

Worthington, *et al. vs.* Hiss, *et al.*

As the case stood before the auditor, there was a total absence of proof on this subject. The plaintiffs asked and obtained from the Circuit Court a decree shutting the doors against all further testimony which should not be presented and filed in Court within thirty days after the filing of the return of the commissioners appointed to make partition. The return of the commissioners was filed on the 2d of August, 1887. The claimants offered no proof within the thirty days, and, of course, the defendants offered none. The claimants elected to rest upon the testimony already in the cause—a position explainable upon their adoption of the arbitrary theory upon which the auditor's accounts were stated, which charged the defendants— not with rents and profits actually received, but with six per cent. annually upon the fee simple value, or, in other words, the leasing value of the entire land if leased by *perpetually renewable leases* by the owners of the *entire fee*—such leases as are taken for *building* purposes. Upon that theory the claimants chose to stand or fall, for there is not a particle of evidence in the record of any *actual* rents and profits, or revenue of any kind derived from the land. The propriety of the decision of the Circuit Court in sustaining the exceptions and setting aside the accounts returned by the auditor, we think must be apparent: If we are right in our view that the plaintiffs, not having offered any evidence in due time, are bound by the restriction inserted in the decree at their own instance, and cannot now introduce further testimony. This is practically an end of the case.

But if the further order of the learned Judge of the Circuit Court remanding the paper to the auditor for another account should be found to be justified, it remains to consider what principles should govern in taking of such account.

Worthington, *et al. vs.* Hiss, *et al.*

The plaintiffs' counsel in the argument in the Circuit Court, seemed disposed to lay some stress upon the provision of the decree of the 23rd of May, 1887, for an account between the defendants, and the requirement therein of contribution from the grantees of Philip Hiss to his devisees for the loss occasioned by the allotment of the plaintiffs' share of the land out of that part of the entire tract which still remains in the Hiss estate; but it is evident that the plaintiffs, co-tenants in common of Philip Hiss, have no concern in the equities existing between Hiss, or his representatives, and those who by assignments or leases from Hiss, have acquired certain rights, and incurred certain obligations as against or to him; but have no privity with the Worthingtons and Knapps. We shall assume therefore that as between the Worthingtons and Knapps on the one side, and Hiss and his representatives or assigns, the latter interest may be properly treated as a unit.

This is the case—at this stage of it, the *ordinary* case—of an account sought between tenants in common in a suit for partition. It is not a claim for damages for any alleged *tortious*, as well as exclusive, holding of the common property; such damages are only recoverable at *law,* in an action of ejectment or trespass for mesne profits. Had those whom we represent been so disposed, they might have *compelled* the plaintiffs to resort to law, by insisting on their own adversary holding, in which case the bill must have been dismissed, or proceedings upon it stayed pending the prosecution of an action of ejectment. On the other hand, had the plaintiffs preferred the relief in damages obtainable at law, they might have procured it by ejectment and trespass for mesne profits, and could afterwards have gone into equity for a partition. But the plaintiffs elected the Court of equity, the defend-

ants acquiesced, and that Court, having determined
the question of title submitted to it by the consent of
both · parties, proceeded then to exercise the jurisdic-
tion which it ordinarily has in a suit for the partition
of land held in common, and conceded to be so held.

Before the Statute of 4 Anne, ch. 16, sec. 27, no ac-
count was obtainable by one tenant in common against
another who had taken all the rents and profits, unless
the former had appointed the latter his bailiff, when
the action of account would lie, or a decree for an
account granted in chancery, as in other cases of prin-
cipal against agent, unless the plaintiff was turned
out of possession, when he might bring ejectment and
recover mesne profits. Neither before nor since the
statute will *equity* decree an account against a *disseisor*
for the *tortious* exclusion and appropriation of the
whole *usufruct.*

In this case, the plaintiffs having elected the equit-
able remedy, and it not being a case between principal
and agent, they can only recover under the Statute of
Anne, and have such an account as that Act author-
izes. *Henderson vs. Eason,* 17 *Q. B.,* 701; *Sturton vs.
Richardson,* 13 *M. & W.,* 17; *Hamilton vs. Conine,* 28
*Md.,* 641; *Sherman vs. Ballou,* 8 *Cowen,* 304; *Sargent
vs. Parsons,* 12 *Mass.,* 149; *McMahon vs. Burchell,* 2
*Phillips,* 127: *Tyson vs. Fairclough,* 2 *Sim. & Stu.,* 143;
*McLaughlin vs. Barnum,* 31 *Md.,* 456, 457; *Neil vs.
Shackelford,* 45 *Texas,* 132; *Freeman on Co-Tenancy
and Partition, secs.* 509, 510, 612; *Alexander's British
Stat.,* 50.

Under the Statute of Anne, a tenant in common can-
not· have an account against a tenant in common for
an occupation rent, *i. e.,* for the value of the use and
occupation which the latter has enjoyed over and above
his due share. If the plaintiff sets up a case of actual
ouster and relies upon it, he must of necessity resort

to an action at law—ejectment and claim of mesne profits therein, or in a succeeding action of trespass for mesne profits. Equity has no jurisdiction to award compensation for the tortious *exclusion.*

Even if an occupation rent can be recovered in an account under a bill for partition, contrary to *all* the English, and the weight of the American authorities, the co-tenant who has had the possession of the entire land, can only be chargeable for the rent of so much of the property as was *capable of producing rent* when the exclusive occupation commenced,; that is to say, for the rental of the land in its *unimproved* and *unproductive* state. See *Hancock vs. Day, McMullan's Equity,* 69 *and* 298, and *Holt & Kerr vs. Robertson, McMullan's Equity,* 475.

And in such an account the defendant tenant in common will be entitled to be allowed for taxes and other public charges which he may have paid.

MILLER, J., delivered the opinion of the Court.

After the remand of this case on the second appeal (67 *Md.,* 139,) the Circuit Court, being so instructed by this Court, passed a decree, dated the 23rd of May, 1887, for a partition of the common property, and directed that the shares of the Worthingtons and Knapps therein should be allotted to them out of the unimproved part now in possession of the devisees of Philip Hiss. This partition and allotment have been made, and to this extent the litigation seems to be ended. It was decided on the first appeal (62 *Md.,* 33,) that the Worthingtons were entitled as tenants in common to an undivided sixth, and the Knapps to an undivided sixth of one-sixth part of all the common property. This property consists of about seven acres of land lying within the limits of the City of Baltimore, through which streets have been laid out and

opened.   About one-half of this area was and still is
vacant and unimproved ground, while the other half
has been improved by valuable dwelling houses erected
thereon by the several purchasers of building lots.
The possessors and occupiers of all this property at
the time the suit was commenced, were *bona fide* pur-
chasers, deriving title from a judicial sale made in
1833, under a decree in equity.

This decree of May, 1887, besides providing for the
partition, also declares, in conformity with the previ-
ous decision of this Court, that the Worthingtons and
Knapps are entitled to recover from the other parties,
their respective shares of the rents and profits of the
common property, and refers the case to the auditor
for the purpose of having an account stated.   The
auditor, however, is expressly directed in stating the
account, to ascertain what portion of such rents and
profits have been due to the use of the *improvements*
upon the parcels of said property which have been
improved since the judicial sale in 1833, as distin-
guished from the portion thereof which have been due
to the *use of the land in its present condition,* and to
exclude the first mentioned portion of such rents and
profits from the allowance to be made to the Worth-
ingtons and Knapps.   This clause of the decree simply
carries into effect the previously declared purpose of
this Court to give full protection to these *bona fide*
purchasers in respect to any beneficial permanent im-
provements they may have placed upon the property.
Such improvements are neither allowed to enhance the
value of the property for the purpose of partition, nor
to increase the responsibility of the improvers in
respect to back rents and profits.   In taking the
account, the auditor is directed to consider the prop-
erty just as if it had all been and remained vacant
and unimproved ground.

When the accounts came in they were rejected on exceptions being filed to them, and the Court by an order passed on the 29th of September, 1888, sent the case back to the auditor, with directions to state the accounts upon the principles laid down in its accompanying opinion, with leave to take additional proof. From this order both sides have appealed.

On the appeal by the Worthingtons and the Knapps the main question is, what *rule* ought to govern this accounting for rents and profits, where the entire property out of which it is supposed such rents and profits were derived, consists, or must be treated as consisting, of vacant unimproved city lots? To determine this we must ascertain the real character of the case, the legal relation of the parties to each other, and upon what ground the right to recover back-rents and profits is to be placed. It seems to us clear that this is not a case coming within the *Statute of 4 Anne, ch.* 16, *sec.* 27. That statute, whatever may be said as to its construction in other respects, applies only to cases where there is no question either as to the existence of a tenancy in common, or as to the *title* of the party seeking the account which it allows. But here the original bill prayed for a partition, and a sale of the property for the purpose of effecting partition between tenants in common, and the defendants strenuously denied the title asserted by the complainants. They insisted that their own title, derived under the judicial sale, was an absolute fee simple interest in the entire property, and that all interest of the Worthingtons and Knapps therein was divested by that sale. This denial of title and resistance to the suit made a clear case of ouster, and the parties would, ordinarily, have been sent to a Court of law to try the question of title in an action of ejectment. That however was

not done in the present case, but the trial was had in equity under the bill for partition, and it is explained in the opinions of this Court in the preceding appeals why there was this departure from the ordinary practice. So far however as the question now before us is concerned, it matters not in what tribunal the title was determined. The Worthingtons and Knapps have successfully asserted their title against the resistance and denial of the other parties, and are now seeking to recover their share of the rents and profits of the common property during the time they have been thus ousted and deprived of possession. Their right to this recovery, so far as the plea of limitations interposed by the other parties will allow, has already been determined by this Court. We think it plain then, that the parties stand in the same position as if the Worthingtons and Knapps had, after recovering in ejectment, brought actions for *mesne profits,* and that the rules applicable to such actions must govern this accounting.

It is well settled, that in an action to recover *mesne profits,* the plaintiff must show in the best way he can, what these profits are, and there are two modes of doing so, to either of which he may resort. He may either prove the profits actually received, or the annual rental value of the land. *West vs. Hughes,* 1 *H. & J.,* 576; *Mitchell vs. Mitchell,* 10 *Md.,* 234. The latter is the mode usually adopted. Where there is occupation of a farm or land used only for agricultural purposes, and the income and profits are, of necesty, the produce of the soil, the owner may have an account of the proceeds of the crops or other products sold or raised thereon, deducting the expense of cultivation. These are necessarily rents and profits in such cases, but even there it is more usual to arrive at the same result by charging the occupier as tenant

with a fair annual money rent. *McLaughlin vs. Barnum*, 31*Md.*, 452. But the proprietor of city lots with improvements upon them, can only derive therefrom, as owner, a fair occupation rent for the purposes for which the premises are adapted. This constitutes the rents and profits, in the legal sense of the terms, of such property, and is all the owner can justly claim in this shape from the occupier. *Ibid.*

The Worthingtons and the Knapps refuse to recognize this rule as applicable to unimproved city building lots. They are not willing to accept their share of what would have been the fair annual rental value of this property in its unimproved condition during the period they were deprived of its possession. Their counsel have formulated another rule of responsibility which may be explained thus: There was a front foot valuation placed upon the whole area as vacant ground, for the purpose of partition. This was its leasing value under leases for ninety-nine years renewable forever, and it is insisted that annual rents and profits must be ascertained according to this valuation. In other words, and to illustrate the effect of this rule, let us suppose that one of these parties was the purchaser and occupier of an actually vacant lot, fronting say twenty feet on McCulloh street, which had been thus valued at $10 per front foot. This means that in the opinion of the valuers the lot could be leased under a perpetual lease at an annual and perpetual rent of $200, and the position taken is that this annual sum of $200 during the period for which recovery is allowed, must be charged against the purchaser in this accounting, notwithstanding it is conceded that no lease was ever made, that no building was ever erected upon the lot, and that no such rent was ever in fact received by him. We regard such a rule not only as novel and unreasonable, but one which if adopted will work great

injustice to the holders of actually vacant lots.    Those
who purchased and are in possession of such lots were
under no obligation to lease them or to improve them
sooner than it might suit their own convenience or
interest.    They had the perfect right to hold them in
their unimproved condition as long as they chose.    In
point of fact they could not, after this litigation was
commenced, have leased them under perpetual leases
even if they had desired to do so.    The filing of the
original bill on the first of June, 1880, must have
stopped that kind of leasing, for it is quite certain
that no one would have taken a lease of that character
on property the title to which was thus put in contro-
versy, nor until the litigation was ended and the title
settled.    The controversy has been a protracted one,
but we do not find that the delay is attributable to any
fault on the part of the defendants.    In short we find
nothing in the circumstances of the case which should
induce a Court of equity to impose any unusual or
harsh rule of compensation against the *bona fide* pur-
chasers of this property.    In our opinion, the Court
below has gone as far as reason or justice will permit
in holding that the true rental value to be considered
as the basis of compensation in this respect, is such
rental value or occupation rent as might fairly have
been made by the defendants during the time of the
ouster, by a valid lease of the property in its unim-
proved condition from year to year or for a term equal
to the period of ouster.    This, in our opinion, is a
liberal application of the general rule governing actions
for *mesne profits*, and gives the Worthingtons and the
Knapps all they are justly entitled to claim.    And
this rule, as we have seen, must apply to all the pro-
perty, whether improved or unimproved.    It has been
suggested, and it may be true, that it will be impossible
to prove that the yearly rent of vacant unimproved

city lots will suffice to pay taxes on them, and that the Worthingtons and Knapps will get nothing in the shape of back-rents and profits. If such is the result of the proof all that we can say is that, in that event, they will be entitled to nothing. It is not in the power of the Court to create rents and profits for their benefit, nor would it be just, in order to benefit them, to make these innocent *bona fide* purchasers responsible on account of rents and profits which they have never in fact received, and never could have realized.

A point has been made as to the sufficiency of the pleas of limitation interposed to the recovery on account of rents and profits, but these pleas were held to be good and valid by this Court on the first appeal. 62 *Md.*, 74.

As to the appeal taken by the other parties, little need be said. We are clearly of opinion it was competent for the Court by its order of September, 1888, to allow additional proof to be taken, notwithstanding any restriction as to time contained in the decree of May, 1887. In fact we think it the plain duty of a Court of equity to allow further proof to come in at any time during the progress of a cause when, in its judgment, the taking of such proof will subserve the ends of justice.

It follows from what we have thus said, that the order appealed from, in so far as it rejects the accounts and refers the case back to the auditor, with leave to the parties to take further proof, will be affirmed, and the cause remanded for further proceedings in accordance with the views expressed in this opinion.

*Order affirmed, and*
*cause remanded.*

(Decided 17th January, 1889.)

Worthington, *et al. vs.* Hiss, *et al.*

Application was made on the 14th of March, 1889, on behalf of Worthington and others, for a re-argument of the foregoing case. The Court denied the application but filed no opinion. Subsequently, for the reason therein stated, the Court through Judge MILLER, delivered the following opinion:

When the motion for a re-argument in this case was overruled, no opinion was filed. This is our usual practice where all the Judges who heard the case argued, are clearly satisfied with the original opinion, and such was the case here. It has, however, been suggested that it would be well, in order to save the parties further delay, litigation, and costs, to express briefly our opinion on a point in regard to which it is supposed there remains some doubt, and that is, whether the Worthingtons and Knapps are entitled to recover, in this accounting for rents and profits, a share of the *ground rents* that may have been received by some of the defendants under perpetual leases. That question was fully considered when the case was decided; and though it may not be so prominently noticed in the opinion as it might have been, is yet clearly covered by the views therein expressed. At first we were inclined to agree with Judge DENNIS, that if any of the defendants had undertaken to make such leases the plaintiffs were entitled to their proportionate share of the rents actually received thereunder, but a careful consideration of the decree of the 23rd of May, 1887, and the antecedent opinions of this Court, stating the principles upon which the accounting for rents and profits should be had, brought our minds to a different conclusion. We found that the decree expressly directed the auditor in stating the account to ascertain what portion of such rents and profits have been due to the use of the improvements upon the parcels of said property which have been improved since the sale

under the decree of 1833, as distinguished from the portion thereof which have been due to the use of the land in its present condition, and *exclude* the first mentioned portion of such rents and profits from the allowance to be made to the complainants. We said that this part of the decree simply carried into effect the previously declared purpose of this Court, to give *full* protection to these *bona fide* purchasers in respect to any beneficial improvements they may have placed upon the property. Such improvements are neither allowed to enhance the value of the property for the purpose of partition, nor to increase the responsibility of the improvers in respect to back rents and profits. In taking the account, the auditor is directed to consider the property just as if it had all been and remained vacant and unimproved ground. And in another part of the opinion, we said the main question is what *rule* ought to govern this accounting for rents and profits, where the *entire property* out of which it is supposed such rents and profits were derived consists, or *must be treated* as consisting, of *vacant and unimproved city lots;* and we then went on to consider and lay down what, in our judgment, was the proper rule to be applied in such a case, and with reference to such property.

We thought then, and still think, that the purchasers under the decree of 1833 were *bona fide* purchasers, that it was the purpose of this Court in its previous decisions in the case to give these purchasers, or those claiming under them, complete protection with respect to all improvements put on the property, and that in doing this the Court was simply doing them *justice*. We could not then and cannot now see any distinction in principle, between the case of a purchaser who built improvements himself and then rented them from year to year, and that of a purchaser who had the improvements put up, or contracted that they should be put

up by his lessee, under a perpetual lease. In either case the rents are paid, because of the buildings or improvements put on the property. From the best consideration we were able to give the case that was our opinion when we decided it, and it remains our opinion now.

*Motion overruled.*

(Filed 12th June, 1889.)