EVA M. MULFINGER *vs.* MAGGIE MULFINGER
ET. AL.

*Gift of Savings Bank Deposit Placed in Name of Donor in
Trust for Herself and Donee, Balance to the Survivor,
on Death of Either—Donee Entitled on
Death of Donor.*

A woman who had certain sums of money on deposit in two
savings banks caused the deposits to be transferred to her
name in trust for herself and her granddaughter, joint own-
ers, subject to the right of either, the balance at the death
of either to belong to the survivor. A few months after-
wards the granddaughter drew out most of the money and
deposited it in another bank in her own name only. The
grandmother filed the bill in this case alleging that she in-
tended to retain the use of the money during her lifetime,
and only designed that the granddaughter should get it at
her death, to be distributed in accordance with private in-
structions. The granddaughter answered that the change
in the deposit had been made with the consent and upon
the advice of her grandmother. The latter died pending the
suit. The evidence in the case is held to show that the
grandmother intended that the money in question should
belong to her granddaughter at her death; that no fraud
or undue influence had been exercised upon her; that the
withdrawal from the bank was made with her knowledge,
and that now the granddaughter is entitled to the fund.

*Decided January 11th, 1911.*

Appeal from the Circuit Court No. 2 of Baltimore City
(DOBLER, J.).

464        MULFINGER *vs.* MULFINGER.

· The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, PATTISON and URNER, JJ.

*D. Eldridge Monroe* (with whom was *H. W. Rusk* on the brief), for the appellant.

*Edward I. Clark* and *Jos. A. Clark*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from a decree of Circuit Court No. 2 of Baltimore City, which determined the effect of deposits made in several savings banks in trust for two designated persons as joint tenants subject to the order of either of them.

It appears from the record that on and prior to June 1st, 1909, Eva M. Mulfinger, the original plaintiff in the case, who was a widow over seventy years of age, had the sum of $2,412 on deposit to her credit in the Savings Bank of Baltimore, which she increased by later deposits to $4,061.20, and she also had the sum of $1,580 on deposit to her credit in the Hopkins Place Savings Bank in Baltimore. · On that day she caused both deposits to be transferred, in her pass book and on the books of the banks, to her credit *"in trust for herself and Maggie M. Mulfinger"* (her granddaughter) *"joint owners subject to the order of either the balance at the death of either to belong to the survivor."* The transfer of the deposit in each instance was made in pursuance of a written direction, signed by Eva M. Mulfinger, stating specifically the form and terms of the trust on which the deposit was thereafter to be held.

On December the 9th Maggie M. Mulfinger, the granddaughter, drew from the Hopkins Place Savings Bank $1,589.42 being the entire balance to the credit of the trust account in that institution, and on January 4th, 1910, she· drew from the Savings Bank of Baltimore $2,000, which constituted about one-half of the money there standing to

the credit of the trust account. Of the money so drawn by her from the two savings banks she deposited to her own credit $3,000 in the Eutaw Savings Bank and $500 in the Savings Department of the German American Bank.

The grandmother on January 21st, 1910, filed the bill in the present case against her granddaughter and the two banks, in which she had deposited the $3,500 drawn from the trust accounts, praying for a decree declaring the money to be the property of the plaintiff and requiring it to be paid to her or transferred to her credit.

The bill itself sets up the transfer by the plaintiff of the money in the savings banks to her as trustee for herself and her granddaughter and the survivor of them, in the manner heretofore stated by us, but it avers that the money was in fact the plaintiff's own property, and that she, being old and liable to pass away, had made the transfer in order to so arrange her worldly affairs that she would have the use of the money during her lifetime, and on her death her granddaughter Maggie would get it, without the expense or intervention of the Orphans' Court, and distribute it in accordance with private instructions which she had given to her. It is then charged in the bill that the granddaughter had proved faithless to the trust reposed in her and had drawn out of bank the $3,500, without the knowledge or consent of the plaintiff, and attempted to convert it to her own use by depositing it to her individual credit in the defendant banks. It is not asserted in the bill that the granddaughter had promised or agreed to distribute the money to other persons when it came to her possession. It is only alleged that such had been the purpose of the grandmother in transferring to herself in trust the money in the savings banks.

All of the defendants answered the bill. The two defendant banks admitted the deposit of the $3,500 with them by the granddaughter in her own name as in the bill alleged, but denied any knowledge of the source from which she obtained

it, and submitted the determination of their rights to the Court.

The answer of the granddaughter Maggie, admitting the facts of the transfer of the money in the savings banks by the plaintiff to herself as trustee, and the withdrawal of the $3,500 therefrom and its redeposit in the defendant 'banks as alleged in the bill, averred and insisted that the plaintiff had made such transfer to herself as trustee voluntarily and in execution of a purpose long entertained and often expressed of benefiting the defendant, and that the withdrawal of the $3,500 and its redeposit in the name of the defendant had been made by her with the knowledge and consent and under the advice of the plaintiff. The answer categorically denied that there had been any fraud or breach of trust by the defendant in the premises.

After testimony had been taken on behalf of the respective parties, to which reference will be made hereafter, the case was heard in due course and a decree passed declaring the $3,500 on deposit in the defendant banks to be the property of the granddaughter, Maggie M. Mulfinger, and directing the administrators of the plaintiff, who had died *pendente lite,* to deliver the deposit books for the money to her. From that decree this appeal was taken.

It is not alleged in the bill that the plaintiff was deficient in mental capacity when she made the deposits of June 1st, 1909, in the savings banks in trust for herself and her granddaughter, or that any fraud or undue persuasion was practiced on her to induce her to make them. We have repeatedly held that when a person of sound mind has made a disposition of his property not inconsistent with law it will not be set aside by a Court of Equity because he subsequently changes his mind and regrets the transaction or because the Court regards the disposition as having been an improvident one. *Simpson* v. *League,* 110 Md. 293; *Kennedy* v. *McCann,* 101 Md. 651; *Bauer* v. *Bauer,* 82 Md. 214; *Reed* v. *Reed,* 82 Md. 138; *Gunther* v. *Gunther,* 69 Md. 560.

In *Milholland* v. *Whalen,* 89 Md. 212, after a thorough review of the law upon the subject which it is unnecessary to repeat here, we held a deposit in a savings bank upon precisely the same terms as those upon which the plaintiff in the present case deposited the money in the two savings banks on June 1st, 1909, to have "constituted a valid declaration of trust, in the absence of contravening proof, and that when a trust is thus created the rights of the beneficiary become fixed even though the settlor retains the bank book in his possession." Nor does the present record present such "contravening proof" as to take this case out of the operation of the principle which was held to control *Milholland's case.* We fail to find any such proof in the record.

The plaintiff produced a number of witnesses, who testified to declarations made to them by the grandmother as to her purpose in having the money in the savings banks put in her name in trust for the purposes already mentioned. Those witnesses agree that she told them that she intended that the money should remain in bank, for her use if necessary, until her death and then to be the property of her granddaughter Maggie, but that the latter had drawn the money out of bank without her consent. Mr. Rusk, who was the most intelligent of the plaintiff's witnesses upon this subject, further said that she told him that her intention also was to secure the money at her death to her granddaughter without the expense of going to the Orphans' Court. The statements of the plaintiff to these witnesses were all made after the granddaughter had drawn the $3,500 out of the savings banks.

On the contrary, John T. Mulfinger, a son of the plaintiff, testified that she had told him, when she sold her Pine street house in the latter part of the year 1909, that she was going to move with her granddaughter, and that she had signed the bank books over to her and that if she wanted any money she would have it. He further said that when he met the plain-

tiff shortly afterwards she told him that she had gone to the bank with the girl and drawn some money and put it in the girl's name, but did not say how much had been so drawn.

Joseph Mulfinger, a grandson of the plaintiff and a brother of Maggie, testified that his grandmother came to him and said: "Joe, I have took and sent Maggie to the bank and I give her all that money, so that your father won't get a cent," and further said to him: "It is my money and I can do with it as it pleases me; she is my granddaughter, and my sister has a granddaughter of her own and she did with her money what she wanted to do with it," and that she always said to him, "everything belongs to your sister and the boys ain't getting a thing" * * * "boys can go out and make a living, but a girl has to be attending to the house all the time."

John V. Foeller testified that in December, 1909, when he was at the plaintiff's house she told him in the presence of her granddaughter Maggie that she wanted him to go to bank with Maggie to draw some money; that both her name and Maggie's were on the books, but that the lawyers told her that if she were to die her son could come in and draw the money and Maggie could not stop him, even though her name was on the book, and that the only way to stop him was to have the money withdrawn and deposited in Maggie's name. He further said that she sent him with Maggie with the two bank books to draw the money, and that they drew $1,587 from the Hopkins Place Savings Bank and deposited $1,000 of it in the Eutaw Savings Bank and $500 in a bank on Broadway and Eastern avenue, the name of which he did not remember. He further said that after having made the deposits Maggie took the Eutaw Savings Bank book and a deposit slip that had been given her for the $500 deposited in the other bank and gave them to her grandmother. The same witness further testified that when Maggie drew the $2,000 out of the Savings Bank of Baltimore he went with her and that she redeposited in her name in the Eutaw Sav-

ings Bank, and then in his presence handed to the plaintiff the Eutaw Savings Bank book with the entry of the deposit in it, and also the book of the Savings Bank of Baltimore from which the $2,000 had been withdrawn, and that the plaintiff, after looking at the books, said to Maggie, "Here. you take these books; they ain't no good to me; they are all yours." He also said that the plaintiff had told Maggie to draw all of the money from both savings banks, but that she drew only $2,000 from the Savings Bank of Baltimore because she did not like to draw it all.

Joseph A. Clark, one of the defendants attorneys of record, testified that in September, 1909, he drew a will for Eva M. Mulfinger the plaintiff giving all of her estate, except $100, to her granddaughter Maggie and that on being told by Maggie of the money on deposit in the savings bank for their joint benefit he told her that if the money was in their joint names and her grandmother died her father could stop the payment of the money at the bank, that there were decisions of the Courts to that effect, and that he advised her to go and draw the money out and put it in her own name.

The defendant, Maggie, gave her own evidence, in so far as she was held to be competent in view of the death of the plaintiff, tending to corroborate the allegations of her answer.

We think that this testimony, in spite of the inconsistencies appearing in part of it, when taken as a whole, not only falls far short of contravening the natural import of the terms of the deposit of June 1st, 1909, in the savings bank to the credit of the plaintiff in trust for herself and her granddaughter as joint tenants subject to the order of either, but confirms the normal presumption that the terms of the trust upon which the plaintiff had the deposits in the savings banks entered to her credit as trustee on June 1st, 1909, expressed her true and deliberate intention and that they should be given their full effect.

It follows from what we have said that the learned Judge below committed no error in awarding to Maggie M. Mul-

finger the $3,500, held by the defendant banks, and directing the delivery to her of the pass books evidencing its deposit with them.

The decree appealed from must be affirmed.

*Decree affirmed with costs.*