FREDERICK H. J. GIMBEL ET AL. *vs.* MARY GIMBEL.

ELIZABETH CONNER ET AL. *vs.* MARY GIMBEL.

*Bank Deposit—Creation of Trust—Construction of Agreement—Appeal—Abandonment of Objection.*

A deposit in a building and loan association by a parent "in trust for" herself and child, "joint owners, subject to the order of both only, the balance at the death of either to belong to the survivor," created a valid trust, in the absence of proof of a contrary intention.　　　　　　　　　　　　　　　p. 185

Where the language of a deposit is such as to show a trust, in the absence of proof of a contrary intention, the burden of showing such intention is on the party denying the existence of a trust.　　　　　　　　　　　　　　　　　　　p. 186

The chancellor, who decided a question of fact in the lower court, is presumed to have done it rightly.　　　　　　p. 187

Where no exception was taken to the action of the lower court in refusing to strike out certain testimony, no objection to this testimony is mentioned in the appellants' brief, and the case is not argued but is submitted on briefs, the appellate court is justified in assuming that the appellants have abandoned their objection to such testimony.　　　　　　　　　　　p. 187

*Decided April 17th, 1925.*

Appeals from the Circuit Court No. 2 of Baltimore City (DAWKINS, J.).

Bills by Mary Gimbel, one against Frederick H. J. Gimbel and the Garrison Lane Building and Savings Association No. 1, and the other against Elizabeth Conner and said association. From a decree for plaintiff in each case, the defendants therein appeal. Affirmed.

The cause was submitted on briefs to Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Walsh, JJ.

*J. Purdon Wright,* for the appellants.

*Charles B. Backman* and *Young & Crothers,* for the appellee.

Walsh, J., delivered the opinion of the Court.

The sole question presented in these cases is whether or not money deposited in trust for two people in a building association "subject to the order of both only" can, under the evidence in the record, be found to have been so deposited by mistake, and the original depositor authorized to withdraw it without the consent of the other party.

The appellee is a widow, sixty-five years of age, and has three children, John, who is not a party to these proceedings, and Frederick and Elizabeth, who, together with the Garrison Lane Building and Savings Association No. 1, are the appellants. In November, 1920, the appellee deposited one thousand dollars in each of three separate accounts in the building association, in the joint names of herself and each of said children. Except for the change in the name of each child these deposits were in the following words:

> "In trust for Mary Gimbel and Frederick Gimbel, joint owners, subject to the order of both only, the balance at the death of either to belong to the survivor."

The money so deposited belonged to the appellee, and was practically all she had, the deposits were made voluntarily for the expressed purpose of avoiding any "argument or court trials" between her children after her death, and the deposit books were retained by the appellee. The dividend checks subsequently issued by the building association were in the joint names of the respective parties, and all of the children willingly endorsed these checks for the appellee from time to time, and she kept the proceeds of the checks.

In October, 1922, $100 of the money deposited in trust for the appellee and her son Frederick was withdrawn, and the money used by the appellee, and in October, 1922, $500 additional was withdrawn, the appellee getting $50, and $450 being used by Frederick. These checks were signed by both Frederick and the appellee. The $1,000 deposited in trust for the appellee and her daughter was intact at the time these cases were filed, though all dividends paid on it had been withdrawn and used by the appellee, and $700 had been withdrawn from John's account and loaned to him by his mother, which loan he later repaid to her. In the spring of 1923 the appellee, who had been supporting herself and adding to her meagre savings by cleaning offices, bought a home in which to spend her declining years, and she asked her children, all of whom were married and living in their own homes, to join with her in signing checks for the money remaining in the three accounts, so that she could pay the balance due on the house so purchased. Her son John complied with her request, but the other two children refused to sign checks for the money in their accounts.

The appellee thereupon filed a bill in equity against each of said two children and the building association, alleging that she had misunderstood the legal effect of the deposits she had made, and setting out that it was her intention, at the time she made the deposits, to retain the power to use the money herself should she have occasion to do so, and further alleging that she explained this to all three of her children and that this arrangement was so understood and agreed to by all of them. The two children against whom the suits were brought filed answers denying that there was any such understanding or agreement, and alleging that the money so deposited by their mother constituted an irrevocable gift which they proposed to keep, and the building association also filed an answer in each case setting out that the legal effect of the deposits was fully explained to the appellee at the time she made them, and that she had not acted through mistake or misapprehension. Testimony was taken in open court, and the learned chancellor, after a full hearing and

argument, granted the relief prayed in the bills of complaint. All of the defendants appealed, and as the questions presented in the two cases are identical, we will dispose of both appeals in this opinion.

There can be no doubt that under the decisions in this State, the language used in making the deposits in the present cases created valid trusts. In the leading case of *Milholland v. Whalen,* 89 Md. 212, the deposit was in the following words: "Metropolitan Savings Bank in account with Miss Elizabeth O'Neill. In trust for herself and Mrs. Mary Whalen, widow, joint owners, subject to the order of either; the balance at the death of either to belong to the survivor." The Court held that "such a deposit * * * constitutes a valid declaration of trust, in the absence of contravening proof; and that when a trust is thus created the rights of the beneficiary become fixed, even though the settlor retains the bank-book in his possession." And see also *Mulfinger v. Mulfinger,* 114 Md. 463, and *Coburn v. Shilling,* 138 Md. 177. In the cases we are now considering the fact that the deposits were made "subject to the order of *both only*," instead of "to the order of either" only serves to render the declaration of trust more apparent.

It is to be observed, however, that in the *Milholland* case, *supra,* it was held that "such a deposit * * * constitutes a valid declaration of trust, *in the absence of contravening proof*"; and in another part of the opinion the Court said: "It is the donor's act which originates the trust and it is the intention with which he does the act which is material. The entry, unexplained, is a sufficient declaration of trust, because it indicates an intention to establish a trust; but this may be rebutted." See also *Coburn v. Schilling, supra; Mathias v. Fowler,* 124 Md. 655; *Farmer v. Farmer,* 137 Md. 69; *Littig v. Mt. Calvary Church,* 101 Md. 494.

In the cases now before us the appellee contends that the facts attending the making of the deposits contravene the intention, apparent from the words used in the deposit books, to create a trust, and it was on the theory that these facts

showed that the appellee did not intend to establish a trust that the cases were decided below.

The testimony is conflicting. The president of the building association stated that the appellee, who discussed the matter with him in German, was fully advised that she was putting the money beyond her personal control by making it "subject to the order of both only," and that she insisted on having it that way. Her son Frederick and her daughter Elizabeth stated that they understood that she was to get the dividends from the deposits during her life, but that the principal was to remain intact and to go to each child after the mother's death. And the appellee and her son John both testified that the appellee intended to retain the right to use the money during her life, should she desire to do so, that it was never her intention to part with this right or to vest any absolute right to the money in her children, and that this was fully understood and agreed to by the three children at the time the deposits were made. Some further support is given to the appellee's version of the matter by the statement of the appellant Frederick Gimbel, that at least $150 of the $600 withdrawn from the account in which his name appeared was not received by him. His action in signing the checks for these withdrawals, particularly the first one for $100, from which he received nothing, would not indicate that he thought the money belonged to him. He does not say that he gave this money to his mother, and indeed he could not say this because he testified that he did not even know who got the money. And of course the action of John Gimbel in borrowing part of the money in his account from his mother and paying it back to her, showed clearly that as between him and his mother there was no thought of any binding trust having been created.

We do not think a further recital of the testimony will serve any useful purpose. The burden of proving that there was no intention to establish a binding trust is, under the circumstances in these cases, upon the appellee, and the question of whether or not she has met that burden is rather close,

but the chancellor who tried the cases below had the benefit of the presence of the witnesses, and was thus in a better position to gauge their perception and intelligence, and to judge the credibility of their testimony; and he has found, under the evidence, that the appellee did not intend to create a trust. There is a presumption that he decided this question rightly (*Coulston v. Baltimore City,* 109 Md. 271-275; 2 R. C. L. 219, *et seq.;* 4 C. J. 731-32, 775), and after a careful reading of the record we are not prepared to reverse his decision.

At the conclusion of the taking of testimony below, the appellants filed a motion to strike out certain testimony regarding other litigation between the appellee and her son and daughter, and certain other testimony about the withdrawals of money from the Frederick Gimbel account, which motion the court overruled. No exception was taken to this action of the court, nor is any objection to this testimony mentioned in the appellants' brief, and as the case was not argued before us but was submitted on briefs, we would be justified in assuming that the appellants have abandoned whatever objections they had to this testimony. However, we have examined the testimony excepted to, and, though some of it would seem to be irrelevant, it was not particularly prejudicial to the appellants, and its admission certainly does not constitute reversible error.

In accordance with the views heretofore expressed the decrees appealed from in each case will be affirmed.

*Decree in each case affirmed, with costs to the appellee.*