## JAMES BRADFORD, ET AL. *v.* EUTAW SAVINGS BANK OF BALTIMORE, ET AL.

[No. 85, October Term, 1945.]

*Decided March 14, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Arthur E. Briscoe* for the appellants.

*Louis Silberstein* and *William Taft Feldman* for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

Appellants are executors of William Bradford who died in Baltimore on August 1, 1944, testate and seized and possessed of three pieces of real estate, two in Baltimore and one in the State of Virginia. He also had, during his lifetime, three joint savings accounts. Two of these accounts, with which we are concerned here only incidentally, were in the name of the testator and his daughter, Viola, one in the Royal Oak Permanent Building Association in which the testimony shows there was on deposit the sum of $1,759.30, and one in the Provident Savings Bank which the testimony shows had credited the sum of $2,088.70. The third account in the amount of $1,158.18 was in the Eutaw Savings Bank of Baltimore City, one of the appellees, and was opened by the testator on November 17, 1914. This account still stands in the form in which it was opened, which is "William Bradford in trust, until withdrawal hereof, for himself and Mabel B. Moore, joint owners subject to withdrawal by either, the balance at death of either to belong to the survivor." Mabel Moore was the testator's niece. She survived him, and is one of the appellees here.

On March 23, 1945, appellants filed a bill of complaint in the Circuit Court No. 2 of Baltimore City, reciting

their appointment and qualification, and asking the court to decree that the sum on deposit in the Eutaw Savings Bank was part of the assets of the estate of their testator. With the bill, they filed as an exhibit, a copy of the testator's will which, after a direction for the payment of debts and funeral expenses, made a bequest of $400 to testator's sister, directed that his city properties be sold and the proceeds divided among his five living surviving children, gave the same children all of his cash or personalty, and gave them his homestead property located in Henrico County, Virginia, share and share alike. The bequest to his sister is contained in Paragraph II of the will. The wording of this paragraph bears an important relation to the issues in this case and will be more fully discussed hereafter. The appellee, Mabel B. Moore, filed a combined demurrer and answer, in the latter claiming that she is the owner of the deposit. She also filed a cross-bill, alleging that the appellants had possession of the bank book evidencing the account, and praying that it be declared her property, and that the appellants be required to surrender it to her. The Eutaw Savings Bank filed an answer admitting the account, stating the exact balance in it at the time of the answer, and disclaiming any knowledge of the facts relating to the ownership of the account. The cross-bill was also answered by the Eutaw Savings Bank to the same general effect. The executors answered the cross-bill, admitted the possession of the bank book, but claimed that testator never intended that the funds should be held in trust for himself and Mabel Moore, and that the form of the deposit was issued merely for his convenience "as explicitly stated in his will."

On these pleadings, the case came on for hearing and testimony was taken in open court on May 24, 1945. At the close of the testimony offered by the complainant, the court indicated there had been no proof sufficient to grant them the relief they prayed. Subsequently, the court indicated that it would be desirable that additional testimony be produced before any action was taken on

the cross-bill. The appellee, Mabel Moore, filed a petition, asking leave to take such testimony, and such leave the court granted forthwith, without any notice to the appellants. This testimony was taken on June 14, 1945. The appellants objected to it below and object here, because they say it should have been taken at the first hearing, as the witnesses were then in court and the appellee closed her case without calling them. However, a chancellor has the power to allow defects in proof to be supplied at any time. *Bailey v. Bailey,* 186 Md. 76, 46 A. 2d 275. Such action is in his discretion and is not subject to review here (*Trustees of German Lutheran, etc. v. Heise,* 44 Md. 453) except where his action is arbitrary, and the rights of some of the parties are improperly affected. When, in the judgment of the chancellor, the ends of justice will be subserved, this court has said that it is his plain duty to allow further proof to come in. *Worthington v. Hiss,* 70 Md. 172, 16 A. 534, 17 A. 1026. We find nothing arbitrary in the action of the chancellor herein in this respect.

On June 18, 1945, the chancellor filed his decree, adjudging Mabel B. Moore the owner of the deposit, mandatorily enjoining the Eutaw Savings Bank to pay the account upon her written order and directing the appellants to surrender the passbook. The case comes here on appeal from this decree.

Apart from the question of the right of the chancellor to reopen the case to hear additional testimony, which we have already disposed of, the case centers around the failure of the chancellor of give what the appellants claim was proper effect to Paragraph II of the will, and around the refusal of the chancellor to permit the lawyer who drafted the will to testify to a conversation he had with the testator about the time of, or prior to, the preparation of the will. Paragraph II of the will reads as follows: "I give, devise and bequeath to my sister, Susanna Johnson of Richmond, Virginia, the sum of $400.00 (four hundred dollars) if living at the time of my demise; the same to be taken from my bank accounts which are in joint names for my own convenience."

The draftsman was asked what his client said to him which caused him to use the langauge in the last clause of this paragraph. This question he was not permitted to answer.

In addition to the contentions raised by these decisions of the chancellor which form the chief basis for the appeal, it should be noted that the appellants also claim that the fourth paragraph of the will, by which the testator gave to his surviving children all cash of which he died "seized," when read in connection with Paragraph II, specifically *revoked* the trust created by the bank account. They cite in support of this contention, *Restatement of the Law, Trusts,* Sec. 58, page 183. Aside from the question, whether, under the law of this State, a testator can revoke a trust in a savings bank deposit by means of his will, we do not find in the will of the testator here (admitted in evidence for what it was worth) any intention on the part of the testator to revoke. He makes no specific disposition of the deposit in question, nor does he make any disposition of his property which cannot be carried out except by using this deposit. The testator had three joint accounts, any one of which contained more than sufficient money to enable the executors to pay the bequest mentioned in Paragraph II. If all were in the same form (which does not appear from the record), then the question might arise whether the testator did not intend to revoke each savings account to the extent of one-third of the bequest, or $133.33. But appellants do not make this contention.

However, the Maryland decisions indicate quite clearly that a bank deposit trust is revocable only during the settlor's lifetime by withdrawal of the fund. *Reil v. Wempe,* 145 Md. 448, at page 463, 125 A. 738; *Gingher v. Fanseen,* 166 Md. 519, at pages 529, 530, 172 A. 75. See Maryland Annotations to *Restatement, Trusts,* Sec. 58. In harmony with these decisions, we hold that such a trust cannot be revoked, either in whole or in part, by a will.

Until the decisions of this court in the Whalen-Milholland cases, *infra,* in 1899, no form of savings bank deposit had been approved in this State which would permit the constructive passing of an account to one of two owners after the death of the other unless the passbook had been delivered prior to that event. In both of the two cases mentioned, in which Judge McSherry filed the opinions for the court on the same day, Elizabeth O'Neill made deposits in savings banks in which she named her sister, Mary Whalen, as joint owner. In the first case (*Whalen v. Milholland,* 89 Md. 199, 43 A. 45, 46) the entry was "Elizabeth O'Neill and Mary Whalen. Joint owners. Payable to the order of either, or the survivor." Miss O'Neill died holding the passbook. There was a claim made by Mrs. Whalen that the passbook had been delivered to her prior to Miss O'Neill's death, but this was not found to be a fact. The court discussed the earlier cases, and stated that if there had been a delivery to and acceptance by Mrs. Whalen of the book, such delivery and acceptance would have been sufficient to effect a valid gift. Without such delivery, it was held that the deposit did not belong to Mrs. Whalen. In the second case (*Milholland v. Whalen,* 89 Md. 212, 43 A. 43, 44 L. R. A. 205) the entry on the passbook, and on the books of the bank was "Metropolitan Savings Bank, in account with Miss Elizabeth O'Neill. In trust for herself and Mrs. Mary Whalen, widow, joint owners, subject to the order of either; the balance at the death of either to belong to the survivor." This is the form that has been generally adopted by the banks of the State since the decision we are now discussing, and it is, to all practical intents and purposes, the same form as that in the case before us. The bank book was retained by Miss O'Neill and the court said that the deposit in that form created Miss O'Neill a trustee. Therefore, it was not necessary for the passbook to be turned over to Mrs. Whalen during Miss O'Neill's lifetime as it was neither a gift *inter vivos* nor a gift *causa mortis,* but was the vesting of the title to the fund in a trustee for the

benefit of both parties named, and the balance remaining at the death of one belonged to the other. The court further said, "The entry, unexplained, is a sufficient declaration of trust, because it indicates an intention to establish a trust, but this may be rebutted."

Since the Whalen-Milholland cases, there have been many decisions in this court in which the question was discussed whether or not it was the intention of the testator to create a trust in a deposit in a savings bank or in a building association. Some of these cases are: *Littig v. Vestry of Mt. Calvary Protestant Episcopal Church,* 101 Md. 494, 61 A. 635; *Mulfinger v. Mulfinger,* 114 Md. 463, 79 A. 1089; *Baker v. Baker,* 123 Md. 32, 90 A. 776; *Colmary v. Fanning,* 124 Md. 548, 92 A. 1045; *Mathias v. Fowler,* 124 Md. 655, 93 A. 298; *Stone v. National City Bank,* 126 Md. 231, 94 A. 657; *Farmer v. Farmer,* 137 Md. 69, 111 A. 464; *Coburn v. Shilling,* 138 Md. 177, 113 A. 761; *Reil v. Wempe,* 145 Md. 448, 125 A. 738; *Gimbel v. Gimbel,* 148 Md. 182, 128 A. 891; *Foschia v. Foschia,* 158 Md. 68, 148 A. 121; *Ghinger v. Fanseen,* 166 Md. 519, 172 A. 75; *Tillinghast v. Lamp,* 168 Md. 34, 176 A. 629; *Bollack v. Bollack,* 169 Md. 407, 182 A. 317; *Fairfax v. Savings Bank,* 175 Md. 136, 199 A. 872, 116 A. L. R. 1334; *Dougherty v. Dougherty,* 175 Md. 441, 2 A. 2d 433; *Hopkins Place Savings Bank v. Holser,* 175 Md. 481, 2 A. 2d 639; *Ragan v. Kelly,* 180 Md. 324, 24 A. 2d 289; *Mushaw v. Mushaw,* 183 Md. 511, 39 A. 2d 465.

A resume of the effect of the earlier cases was made by this court in the case of *Ragan v. Kelly, supra.* In that case, the entry in the passbook was in the same form as the one in the instant case. Judge Forsythe, speaking for this court, said [180 Md. 324, 24 A. 2d 293]: "The circumstances under which deposits were made vary in many instances, but certainly since the decisions of this court in the Milholland-Whalen cases, reported in 89 Md. 199, 43 A. 45, 44 L. R. A. 208 and 89 Md. 212, 43 A. 43, 44 L. R. A. 205, the legal effect of an entry in a bank book similar to the entry in this case has definitely been

settled. The general rule there adopted, and since followed, is that the entry, as it stands, is a sufficient declaration of trust as it, unexplained, indicates an intention to create a trust. But the entry may be explained and the intention it indicates may be rebutted.

"In any particular case, the question whether a trust in law has been created effectually to vest the fund in the survivor depends entirely upon the actual intention of the original owner of the fund *at the time he had the entry in the bank book made*." (Italics supplied.)

Application of these conclusions to the case before us leads to the necessary result that the entry made on the books of the bank and on the passbook thirty years before testator's death, created a trust in favor of the appellee, Mabel B. Moore, applicable to that part of the fund not withdrawn prior to the death of the testator, and that the burden of proof to show it was not the intention of the testator, by so depositing his money, to create such a trust, was upon the appellants.

The only evidence offered for such purpose is that contained in Paragraph II of the will, and certain statements supposed to have been made by the testator to the draftsman of the will, to which the draftsman was not allowed to testify. Testimony of testators, stating their intentions in making their wills, has been admitted in some jurisdictions for the purpose of contradicting the provisions of the wills, and to that extent, is considered an exception to the hearsay rule. A discussion of such cases and of the general doctrine is found in *Wigmore on Evidence*, 3d Ed., Vol. VI, paragraphs 1734 to 1740, both inclusive. No such question is raised here. We are not asked to view the expression in Paragraph II of the will as affecting any device or bequest made by the will. What we are asked to do is to consider it as showing the intention of the testator in the creation of a trust account thirty years prior thereto. And the evidence of the draftsman of the will is not offered to contradict the will. In the case of *Fersinger v. Martin*, 183 Md. 135, on page 138, 36 A. 2d 716, at page 718, this court,

speaking through Judge Collins, said: "The general rule is that no expression as to the intention of the testator may be considered for the reason that an oral utterance would not be a compliance with the statutory requirement that the will be in writing. *Miller on Construction of Wills,* Sec. 40; *Darden v. Bright,* 173 Md. 563, 568, 198 A. 431. We cannot resort to extrinsic evidence to ascertain from the draftsman what the testator instructed or intended him to say, nor can we in order to establish the intention of the testator accept his declarations." See also *Board of Visitors, etc. v. Safe Deposit & Trust Co.,* 186 Md. ???, 46 A. 2d 280. The testimony of the draftsman is, therefore, clearly inadmissible to show what the testator intended by Paragraph II. A testator cannot be heard to say what were his intentions in putting a certain clause in his will, and his attorney, who drafted the will, cannot say what the testator told him about it unless there is a latent ambiguity in the words of the will. No such ambiguity exists here. The words of Paragraph II are capable of only one construction, namely that the bank accounts were in joint names for the testator's own convenience.

But the testimony of the draftsman is offered to show oral statements of the settlor, made thirty years after the creation of the savings account, for the purpose of contradicting the presumption of a trust estate. The record does not show what was the exact nature of the answers expected from the question. No proffer was made, but we assume that it was expected that the draftsman would say that the settlor told him the savings account was created in the form it was for the convenience of the settlor. This was the statement made in Paragraph II, upon which appellants rely. Can such statement, either in writing in the will, or made orally to the draftsman, be admitted to show that the intention of the settlor when he made the savings deposit was not what the words import, but was quite the contrary, and to the greater benefit of the settlor? Or to put it in another form, are the statements of the settlor, not made

at the time, not part of the *res gestae*, admissible to benefit him or his estate?

This court has passed upon the precise question in a case in which a wife, who had $20,000 in a savings account, transferred the account to a trust fund in the same form as that in the present case, the other beneficiary being her husband. She died twelve years later, never having changed the account. Her sister filed a bill to annul the account, claiming that it belonged to the estate of the testatrix. This court said: "In the course of the trial, witness after witness was called upon to testify to statements made by Mrs. Lamp (the settlor) to the effect either that J. George Lamp had executed a deed releasing his marital rights in her property, or that such a release was embodied in the deed that she had signed, *or that the money which she had on deposit with the Equitable Trust Company was, after it had been transferred to the joint account of her and her husband, her individual property*. All of these statements were mere self-serving declarations. No argument in favor of their general admissibility has been suggested to this court, and none has occurred to it. Under our system of jurisprudence, hearsay evidence is excluded as irrelevant and immaterial, self-serving declarations are classified as hearsay evidence, and, insofar as those statements were offered as proof of facts, they were inadmissible. *Jones on Ev.*, 483; *Wigmore on Ev.*, Secs. 1738, 1790; *Jackson v. Kniffen* [2 Johns., N. Y., 31], 3 Am. Dec. [390]. But where the mental condition of the declarant is in issue, and where undue influence is charged, such declarations may become relevant as reflecting upon the mental condition of the declarant, and may be admitted for that purpose only, but, when so admitted, afford no substantive proof of disputed facts. 22 *C. J.*, 278; *Jones on Ev.*, Sec. 438. In considering the facts of this case, therefore all such declarations will be excluded from consideration, except insofar as they relate to any mental condition of the declarant relevant under the issue of undue influence, and will not be accepted as proof

of any other fact." (Italics supplied.) *Tillinghast v. Lamp,* 168 Md. at pages 41 and 42, 176 A. at page 632. In the case before us nothing is at issue as to the mental condition of the settlor, and the chancellor was correct in refusing to consider Paragraph II as evidence of settlor's similar oral statements to the draftsman of his will.

We are not unmindful of the statements in *Bogert on Trusts,* 1935 Ed., Vol. 1, paragraph 47, and *Perry on Trusts,* 7th Ed., Vol 1, paragraph 82, which indicate somewhat different views. These authors think that an inference from the deposit alone would impute an intention which never existed, and that words of trust in a deposit book are rendered equivocal in meaning by the modern practice of making such deposits for other reasons. But the long line of decisions in this court hold otherwise and we cannot reverse them, even if we thought it desirable, unless and until there is legislative action otherwise defining the meaning of a deposit such as the one in the case before us.

*Decree affirmed, with costs.*